IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TAYLA GREENE<br>as administrators of the estate of the decedent<br>RONALD GREENE<br>                Plaintiff<br><br>      v.<br><br>TROOPER DAKOTA DEMOSS and MASTER TROOPER CHRIS HOLLINGSWORTH and MASTER TROOPER KORY YORK and SERGEANT FLOYD MCELROY and LIEUTENANT JOHN CLARY and CAPTAIN JOHN PETERS AND DEPUTY SHERRIF CHRISTOPHER HARPIN and JOHN DOE CORPORATION 1-3<br>                Defendants. | **Civil Action<br>No. _____** |

**PLAINTIFF'S COMPLAINT**

NOW COMES Tayla Greene, Independent Administrator of the Estate of the Decedent, Ronald Greene, complaining of Defendants, Trooper Dakota Demoss, Master Trooper Chris Hollingsworth, Master Trooper Kory York, Captain John Peters, Lieutenant John Clary, Sergeant Floyd McElroy, and John Doe Corporations 1-3 seeking judgment in her favor for violations of the Decedent's Fourth Amendment rights under the United States Constitution and Louisiana State Law. In support thereof, Plaintiff avers as follows:

**PARTIES**

1. Ronald Greene, the Decedent, was at all relevant times a person of the full age and majority and a resident of West Monroe, Louisiana in Ouachita Parrish.

2. Plaintiff Tayla Greene is the daughter of Ronald Greene, a person of the full age and of majority, and a resident of Windemere, Florida. Tayla Greene sues on behalf of herself

and as the personal representative of the Estate of Ronald Greene, deceased.

3. Trooper Dakota Demoss, was at all relevant times, a duly appointed Louisiana State Police Trooper acting within the scope of his employment and under color of law.

4. Captain John Peters, was at all relevant times, a duly appointed Louisiana State Police Captain acting within the scope of his employment and under color of law.

5. Lieutenant John Clary, was at all relevant times, a duly appointed Louisiana State Police Lieutenant acting within the scope of his employment and under color of law.

6. Sergeant Floyd McElroy was at all relevant times, a duly appointed Louisiana State Police Sergeant acting within the scope of his employment and under color of law.

7. Master Trooper Chris Hollingsworth, was at all relevant times, a duly appointed Louisiana State Police Master Trooper acting within the scope of his employment and under color of law.

8. Master Trooper Kory York, was at all relevant times, a duly appointed Louisiana State Police Master Trooper acting within the scope of his employment and under color of law.

9. Deputy Sherriff Christopher Harpin was at all relevant times, a duly appointed Union Parish Deputy Sherriff's Officer acting within the scope of his employment and under color of law.

10. John Doe Corporation 1 is a currently unidentified manufacturer of Electronic Control Weapons.

11. John Doe Corporation 2 is a currently unidentified distributor of Electronic Control Weapons.

12. John Doe Corporation 3 provides training to law enforcement on the use of Electronic Control Weapons.

## JURISDICTION AND VENUE

13. Jurisdiction exists in this Honorable Court pursuant to 28 U.S.C. §§ 1331 and 1343 as this action is brought pursuant to 42 U.S.C. § 1983 to redress a deprivation of the Fourth and Fourteenth Amendment rights of the decedent Ronald Greene. Plaintiff further invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to adjudicate pendent state law claims.

14. Venue is proper in this Honorable Court as Defendants' constitutional violations and intentional torts and otherwise violative conduct occurred within the Western District of Louisiana.

## NATURE OF THE CASE

15. The Administrator of the Estate of Ronald Greene brings this matter before the court seeking damages for the tragic and unnecessary death of their decedent Ronald Greene.

16. Greene was brutalized by Louisiana State Police and Union Parish Deputy Officers which caused his death.

17. The lethal force used against Greene was unprovoked, unjustified, unreasonable, excessive, and in violation of Greene's rights under the United States Constitution and the laws of the State of Louisiana.

## FACTS

18. On or about 12 a.m. on May 10, 2019, Greene was driving a silver Toyota CH-R on U.S. 80 in Monroe, Louisiana.

19. Trooper Demoss contends that he attempted to initiate a traffic stop of Greene's car.

20. Trooper Demos does not define any violation of the motor vehicle code that would justify a stop. Instead he contends that he observed a "traffic violation".

21. Greene did not stop his car and a vehicle pursuit ensued.

22. Greene traveled along US 80 to LA 143 and into Union Parish where his car swerved, spun, and crashed into a wooded area.

23. The front of Greene's car did not make impact with a tree and his airbag did not deploy.

24. The highest level of impact sustained by the car occurred in the rear driver side and said impact was moderate.

25. Greene was able to exit the vehicle without assistance.

26. Green was not injured and could walk, speak and otherwise function in a healthy manner after the crash.

27. Almost immediately thereafter, Trooper Demoss and Master Trooper Hollingsworth arrived on the scene.

28. Shortly thereafter, Captain Peters, Lieutenant Clary, Sergeant McElroy, Master Trooper York, and Deputy Sherriff Harpin arrived at the scene.

29. Greene exited his car and began to apologize to the officers, telling them he knew he should have stopped the vehicle earlier.

30. Two officers pinned Greene down on the ground while he screamed 'Oh my God.'"

31. Greene was moaning, begging the officers to stop, and repeatedly saying "I'm sorry."

32. Despite Greene's contrition and surrender, Trooper Demoss, Master Trooper Hollingsworth Master Trooper York, Captain Peters, Lieutenant Clary, Sergeant McElroy, and Deputy Sherriff Harpin individually and in concert used lethal force against Greene.

33. Despite Greene's contrition and surrender the Defendant officers used electronic

control weapons against Green at least three times thus attacking his heart with massive amounts of electricity.

34. It an effort to conceal the identity or identities of the officer or officers who deployed electronic control weapons, the Louisiana State Police has declined to produce or release bodycam footage, dashboard cam footage, discharge logs, use of force reports or any number of investigative materials that would identify who used lethal force.

35. The force used against Greene was unjustified, unreasonable, excessive, and in violation of Greene's Fourth Amendment rights.

36. The force used against Greene left him beaten, bloodied, and in cardiac arrest.

37. An officer called for an ambulance was at 12:29 a.m.

38. When the Emergency Medical Technicians arrived at 12:51 a.m. they found Greene unresponsive. He was propped up against an officer's leg, covered in blood with multiple "TASER" Barbs penetrating his body.

39. Emergency Medical Technicians determined that Greene was in cardiac and respiratory arrest.

40. Greene was placed on a gurney and transported to Glenwood Medical Center. He remained unresponsive when he arrived at 1:25 a.m.

41. Greene was pronounced dead at 1:27 a.m.

42. An initial report from Glenwood Medical Center listed the principle cause of Greene's death as cardiac arrest. He was also diagnosed with an "unspecified injury of head."

43. Officers immediately began efforts to obfuscate the true nature of the conduct that caused Greene's death. The following are examples of the Officers' deceptions

a. Police personnel told Greene's family that he had been killed in an auto accident.

b. One Officer told Greene's mother that he had been killed immediately after hitting a tree.

c. The call for Emergency Medical Services concealed the fact that lethal force had been used.

d. The sole police report produced to date does not indicate that force was used.

e. Inconsistent versions of the Officers' involvement with Greene were provided to medical treatment providers at Glenwood Hospital.

f. Officers claimed that Greene was intoxicated prior to learning that a toxicology exam found no alcohol or drugs.

g. Greene's body was transported out of the State of Louisiana to conduct an autopsy, thereby denying the right of the family to have a representative observe same.

h. Denying Green's family access to video footage of the use of lethal force.

44. Doctor Omokhuale, an emergency room physician at Glenwood confirms the Officers' deception and stated as follows:

> "Upon obtaining more history from different law enforcement personnel [sic], history seems to be disjointed and does not add up. Different versions are present… family states they were told by law enforcement that patient died on impact with three immediately after motor vehicle accident, but law enforcement state to me that patient for out of the car and was running and involved in a fight and struggle where them where he was tased 3 times."

45. The Officers/ awareness of the unconstitutional nature of their conduct resulted in persistent attempts to obfuscate the true nature of the conduct that caused Greene's death.

46. The autopsy revealed the true nature of the Officers' conduct, noting multiple signs of recent trauma, blunt force injuries to the head and face, facial lacerations, facial abrasions, facial contusions, scalp lacerations, blunt force injuries to the extremities, and abrasions and contusions over the left and right knees.

47. The Officers use of lethal force was malicious, unreasonable, and excessive.

### WRONGFUL DEATH - LA C.C. Art. 2315.2.

48. Plaintiff hereby brings a Wrongful Death claim pursuant to LA C.C. Art. 2315.2.

49. The actions of the Defendants, Trooper Demoss, Master Trooper Hollingsworth Master Trooper York, Captain Peters, Lieutenant Clary, Sergeant McElroy, Deputy Sherriff Harpin, and John Doe Corporations 1-3 caused the death of Ronald Greene.

50. Plaintiff claims all available damages under the Louisiana Wrongful Death Statute for financial contributions and the loss of future services, support, society, comfort, affection, guidance, tutelage, and contribution that the Plaintiff's decedent, Ronald Greene, would have rendered but for his traumatic, untimely and unnatural death.

51. Plaintiff claims damages for payment for all medical expense, funeral expenses, and burial expenses.

### SURVIVAL ACTION - LA C.C. Art. 2315.1

52. Plaintiff hereby brings a Survival Action under the Louisiana Survival Statute, LA C.C. Art. 2315.1.

53. Plaintiff claims all damages recoverable under the Statute, including but not limited to, loss of income both past and future income potential, as well as, pain and suffering prior to death, and for emotional distress suffered by Ronald Greene from the initiation of the attack upon him until the ultimate time of his death.

## COUNT I: 42 U.S.C. § 1983 EXCESSIVE FORCE
*Trooper Demoss, Master Trooper Hollingsworth Master Trooper York, Captain Peters, Lieutenant Clary, Sergeant McElroy, and Deputy Sherriff Harpin*

54. The preceding paragraphs are incorporated by reference as though laid out fully herein.

55. Trooper Demoss, Master Trooper Hollingsworth Master Trooper York, Captain Peters, Lieutenant Clary, Sergeant McElroy, and Deputy Sherriff Harpin's punching, kicking, beating, use of an Electronic Control Weapon, or other use of force all contributing caused Ronald Greene's mental anguish, pain, agony and untimely death.

56. The actions of Trooper Demoss, Master Trooper Hollingsworth Master Trooper York, Captain Peters, Lieutenant Clary, Sergeant McElroy, and Deputy Sherriff Harpin were intentional, excessive, and objectively unreasonable.

57. Trooper Demoss, Master Trooper Hollingsworth Master Trooper York, Captain Peters, Lieutenant Clary, Sergeant McElroy, and Deputy Sherriff Harpin were acting under color of state law.

58. Plaintiff seeks all available damages, including for the nature and extent of Decedent's injuries, pre-death pain and suffering, emotional distress, and loss of life and enjoyment of life, as well as any other damages available under the law.

**WHEREFORE**, Plaintiffs demands judgment in their favor, and against Defendants pursuant to 42 U.S.C. § 1983, in an amount in excess of One Million Dollars ($1,000,000.00), including interest, delay damages, costs of suit, general and specific damages, including both survival and wrongful death damages, punitive and exemplary damages as provided by law, attorneys' fees under U.S.C. 1985 and 1988, and any other remedies legally appropriate.

## COUNT II: 42 U.S.C. BYSTANDER LIABILITY
*Trooper Demoss, Master Trooper Hollingsworth Master Trooper York, Captain Peters, Lieutenant Clary, Sergeant McElroy, and Deputy Sherriff Harpin*

59. The preceding paragraphs are incorporated by reference as though laid out fully herein.

60. Trooper Demoss, Master Trooper Hollingsworth Master Trooper York, Captain Peters, Lieutenant Clary, Sergeant McElroy, and Deputy Sherriff Harpin's observed Ronald Greene being punched, kicked, beaten, and abused with an Electronic Control Weapon, which caused Ronald Greene's mental anguish, pain, agony and untimely death.

61. Trooper Demoss, Master Trooper Hollingsworth Master Trooper York, Captain Peters, Lieutenant Clary, Sergeant McElroy, and Deputy Sherriff Harpin's knew that Ronald Greene being punched, kicked, beaten, and abused with an Electronic Control Weapon, was unconstitutional but failed to intervene despite having the opportunity to do so.

62. Plaintiff seeks damages, including for the nature and extent of Decedent's injuries, pre-death pain and suffering, emotional distress, and loss of life and enjoyment of life, as well as all available damages available under the law.

**WHEREFORE**, Plaintiffs demands judgment in their favor, and against Defendants pursuant to 42 U.S.C. § 1983, in an amount in excess of One Million Dollars ($1,000,000.00), including interest, delay damages, costs of suit, general and specific damages, including both survival and wrongful death damages, punitive and exemplary damages as provided by law, attorneys' fees under U.S.C. 1985 and 1988, and any other remedies legally appropriate.

## COUNT III: BATTERY
*Trooper Demoss, Master Trooper Hollingsworth Master Trooper York, Captain Peters, Lieutenant Clary, Sergeant McElroy, and Deputy Sherriff Harpin*

63. The preceding paragraphs are incorporated by reference as though laid out fully herein.

64. Trooper Demoss, Master Trooper Hollingsworth Master Trooper York, Captain Peters,

Lieutenant Clary, Sergeant McElroy, and Deputy Sherriff Harpin punched, kicked, beat, and abused Ronald Greene with an Electronic Control Weapon, which caused him mental anguish, pain, agony and untimely death.

65. The actions of Trooper Demoss, Master Trooper Hollingsworth Master Trooper York, Captain Peters, Lieutenant Clary, Sergeant McElroy, and Deputy Sherriff Harpin were intentional, harmful, and offensive.

66. Plaintiff seeks damages, including for the nature and extent of Decedent's injuries, pre-death pain and suffering, emotional distress, and loss of life and enjoyment of life, as well as all available damages available under the law.

**WHEREFORE**, Plaintiffs demands judgment in their favor, and against Defendants in excess of One Million Dollars ($1,000,000.00), including interest, delay damages, costs of suit, general and specific damages, including both survival and wrongful death damages, punitive and exemplary damages as provided by law.

### COUNT IV: PRODUCT LIABILITY
*Corporate John Does 1-3*

67. The preceding paragraphs are incorporated by reference as though laid out fully herein.

68. John Doe Corporations 1-3 are the manufacturer, distributor, marketer, and training providers of Electronic Control Weapons in the Louisiana State Police Department and Union Parish Sherri's Office.

69. John Doe Corporations hold their Electronic Control Weapons out as a safe tool for Law Enforcement to use.

70. John Doe Corporations were aware of that cardiac arrest and death are substantial risks associated with Electronic Control Weapons.

71. Nonetheless, John Doe Corporations continued to market and sell Electronic Control Weapons.

72. Upon information and belief, an Electronic Control Weapon produced by John Doe Corporations was used during the lethal assault of Ronald Greene.

73. As a result of the assault and defects or inherent dangers of the Electronic Control Weapons produced by John Doe Corporation, Ronald Greene died from cardiac arrest.

74. Plaintiff seeks damages, including for the nature and extent of Decedent's injuries, pre-death pain and suffering, emotional distress, and loss of life and enjoyment of life, as well as all available damages available under the law.

**WHEREFORE**, Plaintiffs demands judgment in their favor, and against Defendants in excess of One Million Dollars ($1,000,000.00), including interest, delay damages, costs of suit, general and specific damages, including both survival and wrongful death damages, punitive and exemplary damages as provided by law.

Respectfully Submitted,

Ronald Haley, Esquire
HALEY AND ASSOCIATES
8211 Goodwood Blvd Ste E,
Baton Rouge, LA 70806

Mark V. Maguire, Esquire
McELDREW YOUNG PURTELL
123 South Broad Street
Philadelphia, PA 19109
Pro Hac Vice Petition forthcoming