## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **TAYLA GREENE** | : | |
| **as Administrator of the Estate of the decedent** | : | |
| **RONALD GREENE** | : | |
| **Plaintiff** | : | |
| | : | **Civil Action** |
| **v.** | : | **No. 20-0578** |
| | : | |
| **TROOPER DAKOTA DEMOSS and MASTER** | : | |
| **TROOPER CHRIS HOLLINGSWORTH and** | : | |
| **MASTER TROOPER KORY YORK and** | : | |
| **SERGEANT FLOYD MCELROY and** | : | |
| **LIEUTENANT JOHN CLARY and CAPTAIN** | : | |
| **JOHN PETERS and COLONEL KEVIN** | : | |
| **REEVES and DEPUTY SHERRIF** | : | **Jury Trial Demanded** |
| **CHRISTOPHER HARPIN and DOE 1-5** | : | |
| **and JOHN DOE CORPORATION 1-3** | : | |
| **Defendants.** | : | |

### PLAINTIFF'S FIRST AMENDED COMPLAINT

NOW COMES Tayla Greene, Independent Administrator of the Estate of the Decedent, Ronald Greene, complaining of Defendants, Trooper Dakota Demoss, Master Trooper Chris Hollingsworth, Master Trooper Kory York, Captain John Peters, Lieutenant John Clary, Sergeant Floyd McElroy, Deputy Sherriff Christopher Harpin and Colonel Kevin Reeves seeking judgment in her favor for violations of the Decedent's First, Fourth, and Fourteenth Amendment rights under the United States Constitution and Louisiana State Law. In support thereof, Plaintiff avers as follows:

### PARTIES

1. Ronald Greene, the Decedent, was at all relevant times a person of the full age and majority and a resident of west Monroe, Louisiana in Ouachita Parrish.

2. Plaintiff Tayla Greene is the daughter of Ronald Greene, a person of the full age and of

majority, and a resident of Windemere, Florida. Tayla Greene sues on behalf of herself

and as the personal representative of the Estate of Ronald Greene, deceased.

3. Trooper Dakota Demoss was at all relevant times, a duly appointed Louisiana State

Police Trooper acting within the scope of his employment and under color of law. He is

hereby sued in his personal capacity.

4. Captain John Peters was at all relevant times, a duly appointed Louisiana State Police

Captain acting within the scope of his employment and under color of law. He is hereby

sued in his personal capacity.

5. Lieutenant John Clary was at all relevant times, a duly appointed Louisiana State Police

Lieutenant acting within the scope of his employment and under color of law. He is

hereby sued in his personal capacity.

6. Sergeant Floyd McElroy was at all relevant times, a duly appointed Louisiana State

Police Sergeant acting within the scope of his employment and under color of law. He is

hereby sued in his personal capacity.

7. Master Trooper Chris Hollingsworth was at all relevant times, a duly appointed

Louisiana State Police Master Trooper acting within the scope of his employment and

under color of law. He is hereby sued in his personal capacity.

8. Master Trooper Kory York was at all relevant times, a duly appointed Louisiana State

Police Master Trooper acting within the scope of his employment and under color of

law. He is hereby sued in his personal capacity.

9. Colonel Kevin Reeves was at all relevant times, a duly appointed Louisiana State Police

colonel and superintendent acting within the scope of his employment and under color

of law. Colonel Reeves is the highest-ranking member of the Louisiana State Police. He

is hereby sued in his personal capacity.

10. Deputy Sheriff Christopher Harpin was at all relevant times, a duly appointed Union Parish Deputy Sherriff's Officer acting within the scope of his employment and under color of law. He is hereby sued in his personal capacity.

11. Doe 1 is a member of the Louisiana State Police acting within the scope of his employment and under color of law. He or she is hereby sued in his or her personal capacity.

12. Doe 2 is a member of the Louisiana State Police acting within the scope of his employment and under color of law. He or she is hereby sued in his or her personal capacity.

13. Doe 3 is a member of the Louisiana State Police acting within the scope of his employment and under color of law. He or she is hereby sued in his or her personal capacity.

14. Doe 4 is a member of the Louisiana State Police acting within the scope of his employment and under color of law. He or she is hereby sued in his or her personal capacity.

15. Doe 5 is a member of the Louisiana State Police acting within the scope of his employment and under color of law. He or she is hereby sued in his or her personal capacity.

16. John Doe Corporation 1 is a currently unidentified manufacturer of Electronic Control Weapons.

17. John Doe Corporation 2 is a currently unidentified distributor of Electronic Control Weapons.

18. John Doe Corporation 3 provides training to law enforcement on the use of Electronic Control Weapons.

## JURISDICTION AND VENUE

19. Jurisdiction exists in this Honorable Court pursuant to 28 U.S.C. §§ 1331 and 1343 as this action is brought pursuant to 42 U.S.C. § 1983 to redress a deprivation of the Fourth and Fourteenth Amendment rights of the decedent Ronald Greene.  Plaintiff further invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to adjudicate pendent state law claims.

20. Venue is proper in this Honorable Court as Defendants' constitutional violations and intentional torts and otherwise violative conduct occurred within the Western District of Louisiana.

## NATURE OF THE CASE

21. The Administrator of the Estate of Ronald Greene bring this matter before the court seeking damages for the tragic and unnecessary death of their decedent Ronald Greene.

22. Greene was brutalized by Louisiana State Police and Union Parish Deputy Officers which caused his death.

23. The lethal force used against Greene was unprovoked, unjustified, unreasonable, excessive, and in violation of Greene's rights under the United States Constitution and the laws of the State of Louisiana.

## FACTS

24. On or about 12 a.m. on May 10, 2019, Greene was driving a silver Toyota CH-R on U.S. 80 in Monroe, Louisiana.

25. Trooper Demoss contends that he attempted to initiate a traffic stop of Greene's car.

26. Trooper Demoss does not define any violation of the motor vehicle code that would justify a stop. Instead he contends that he observed a "traffic violation".

27. Greene did not stop his car and a vehicle pursuit ensued.

28. Greene traveled along US 80 to LA 143 and into Union Parish where his car swerved, spun, and crashed into a wooded area.

29. The front of Greene's car did not make impact with a tree and his airbag did not deploy.

30. The highest level of impact sustained by the car occurred in the rear driver side and said impact was moderate.

31. Greene was able to exit the vehicle without assistance.

32. Green was not injured and could walk, speak and otherwise function in a healthy manner after the crash.

33. Almost immediately thereafter, Trooper Demoss and Master Trooper Hollingsworth arrived on the scene.

34. Shortly thereafter, Captain Peters, Lieutenant Clary, Sergeant McElroy, Master Trooper York, and Deputy Sherriff Harpin arrived at the scene.

35. Greene exited his car and began to apologize to the officers, telling them he knew he should have stopped the vehicle earlier.

36. Officers pinned Greene down on the ground while he screamed 'Oh my God.'"

37. Greene was moaning, begging the officers to stop, and repeatedly saying "I'm sorry."

38. Despite Greene's contrition and surrender, Trooper Demoss, Master Trooper Hollingsworth, Master Trooper York, Captain Peters, Lieutenant Clary, Sergeant

McElroy, and Deputy Sherriff Harpin individually and in concert used lethal force against Greene.

39. Trooper Demoss beat, smothered, and choked Greene despite the fact that he had surrendered, was not resisting, was in custody, and posed no threat.

40. Master Trooper Hollingsworth beat, smothered, and choked Greene despite the fact that he had surrendered, was not resisting, was in custody, and posed no threat.

41. Master Trooper York beat, smothered, and choked Greene despite the fact that he had surrendered, was not resisting, was in custody, and posed no threat.

42. Lieutenant Clary beat, smothered, and choked Greene despite the fact that he had surrendered, was not resisting, was in custody, and posed no threat.

43. Sergeant McElroy beat, smothered and choked Greene despite the fact that he had surrendered, was not resisting, was in custody, and posed no threat.

44. Captain Peters beat, smothered, and choked Greene despite the fact that he had surrendered, was not resisting, was in custody, and posed no threat.

45. Deputy Sherriff Harpin beat, smothered, and choked Greene despite the fact that he had surrendered, was not resisting, was in custody, and posed no threat.

46. Despite Greene's contrition and surrender Defendant officers used an electronic control weapon against Greene at least three times thus attacking his heart with massive amounts of electricity.

47. It is currently unknown which officer or officers used electronic control weapon(s) because the Louisiana State Police and Colonel Reeves refused to produce or release bodycam footage, dashboard cam footage, discharge logs, use of force reports or any number of investigative materials that would identify who used lethal force.

48. Trooper Demoss watched other officers beat, smother, choke, and use an electronic control weapon on Greene despite the fact that he had surrendered, was not resisting, was in custody, and posed no threat.

49. Master Trooper Hollingsworth watched other officers beat, smother, choke, and use an electronic control weapon on Greene despite the fact that he had surrendered, was not resisting, was in custody, and posed no threat.

50. Master Trooper York watched other officers beat, smother, choke and use an electronic control weapon on Greene despite the fact that he had surrendered, was not resisting, was in custody, and posed no threat.

51. Lieutenant Clary watched other officers beat, smother, choke, and use an electronic control weapon on Greene despite the fact that he had surrendered, was not resisting, was in custody, and posed no threat.

52. Sergeant McElroy watched other officers beat, smother, choke, and use an electronic control weapon on Greene despite the fact that he had surrendered, was not resisting, was in custody, and posed no threat.

53. Captain Peters watched other officers beat, smother, choke, and use an electronic control weapon on Greene despite the fact that he had surrendered, was not resisting, was in custody, and posed no threat.

54. Deputy Harpin watched other officers beat, smother, choke and use an electronic control weapon on Greene despite the fact that he had surrendered, was not resisting, was in custody, and posed no threat.

55. The force used against Greene was unjustified, unreasonable, excessive, and in violation of Greene's Fourth Amendment rights.

56. The force used against Greene left him beaten, bloodied, and in cardiac arrest.

57. An officer called for an ambulance at 12:29 a.m.

58. When the Emergency Medical Technicians arrived at 12:51 a.m. they found Greene unresponsive. He was propped up against an officer's leg, covered in blood with multiple "TASER" Barbs penetrating his body.

59. Emergency Medical Technicians determined that Greene was in cardiac and respiratory arrest.

60. Greene was placed on a gurney and transported to Glenwood Medical Center. He remained unresponsive when he arrived at 1:25 a.m.

61. Greene was pronounced dead at 1:27 a.m.

62. An initial report from Glenwood Medical Center listed the principle cause of Greene's death as cardiac arrest. He was also diagnosed with an "unspecified injury of head."

63. Master Trooper Hollingsworth confirmed the vicious and unconstitutional nature of the Officers' conduct by confessing that he choked and "beat the ever-loving fuck" out of Greene until he was spitting blood and went limp.

64. Master Trooper Hollingsworth confirmed that this vicious and unconstitutional beating was inflicted by multiple officers and in the presence of multiple officers.

65. All Defendants immediately began efforts to obfuscate the true nature of the conduct that caused Greene's death. The following are examples of the Officers' deceptions:

    a. Greene's family was told that he had been killed in an auto accident.

    b. Greene's mother was told that he had been killed immediately after hitting a tree.

    c. The call for Emergency Medical Services omitted any mention that force had

been used.

    d.   The sole police report produced to date does not indicate that force was used.

    e.   Inconsistent versions of the Officers' involvement with Greene were provided to medical treatment providers at Glenwood Hospital.

    f.   The sole police report produced to date asserted that Greene was intoxicated prior to any toxicology examinations being conducted.

    g.   Greene's body was sent out of the State of Louisiana to conduct an autopsy, denying the right of the family to have a representative observe same.

    h.   Green's family has been denied access to video footage of the use of lethal force.

66. Doctor Omokhuale, an emergency room physician at Glenwood confirms the Officers' deception and stated as follows:

> "obtaining more history from different law enforcement personal, the account of what happened was **disjointed and does not add up. Different versions are present** and family did not come to the emergency room. Family states they were told by law enforcement that patient died on impact with tree immediately after motor vehicle accident, but law enforcement state to me that patient out of the car and was running and involved in a fight and struggle where them where he was tased 3 times."

67. The Defendants persistent attempts to obfuscate the true nature of the conduct that caused Greene's death were made because they were aware that their conduct was unconstitutional.

68. The reality of the Officers conduct is revealed in the autopsy that found multiple signs of recent trauma, blunt force injuries to the head and face, facial lacerations, facial abrasions, facial contusions, scalp lacerations, blunt force injuries to the extremities, and abrasions and contusions over the left and right knees.

69. These findings in conjunction with the excessive use of Electronic Control Weapons

reveal the true nature of the Officers' conduct.

70. The Officers use of lethal force was malicious, unreasonable, and excessive.

71. Colonel Reeves was aware of the true nature of the officer's unconstitutional conduct. that the officers engaged in an unnecessary and vicious assault of Greene that resulted in his death.

72. Despite knowing that officers under his command had murdered Greene, Colonel Reeves permitted the officers to continue to function as officers.

73. Despite knowing that officers under his command had deprived Greene of his constitutional rights Reeves refused to produce or release bodycam footage, dashboard cam footage, discharge logs, use of force reports or any number of investigative materials that would reveal the unconstitutional conduct.

74. For more than 14 months, Colonel Reeves engaged in an active effort to portray Greene's death as car accident, refusing to allow any information about the incident to become public.

75. The purpose of Colonel Reeves' refusal to produce or release bodycam footage, dashboard cam footage, discharge logs, use of force reports or any number of investigative materials was to deny Plaintiff the right to institute an action to redress the deprivation of Greene's constitutional rights.

76. Colonel Reeves conspired with the officers to misrepresent, conceal, and obfuscate the true nature of their unconstitutional conduct.

77. The purpose of Colonel Reeves' misrepresentation, concealment, and obfuscation was to deny Plaintiff the right to institute an action to redress the deprivation of his constitutional rights.

78. Does 1-5 are members of the Louisiana State Police and/ or related institutions who conspired with Demoss, Hollingsworth, York, Peters, Clary, McElroy, Deputy Harpin and Reeves to misrepresent, conceal, and obfuscate the true nature of the vicious unconstitutional conduct that caused Green's Death.

79. The purpose Does 1-5's misrepresentation, concealment, and obfuscation was to deny Plaintiff the right to institute an action to redress the deprivation of his constitutional rights.

## WRONGFUL DEATH - LA C.C. Art. 2315.2.

80. Plaintiff hereby brings a Wrongful Death claim pursuant to LA C.C. Art. 2315.2.

81. The actions of the Defendants, Trooper Demoss, Master Trooper Hollingsworth Master Trooper York, Captain Peters, Lieutenant Clary, Sergeant McElroy, Deputy Sherriff Harpin, and John Doe Corporations 1-3 caused the death of Ronald Greene.

82. Plaintiff claims all available damages under the Louisiana Wrongful Death Statute for financial contributions and the loss of future services, support, society, comfort, affection, guidance, tutelage, and contribution that the Plaintiff's decedent, Ronald Greene, would have rendered but for his traumatic, untimely and unnatural death.

83. Plaintiff claims damages for payment for all medical expense, funeral expenses, and burial expenses.

## SURVIVAL ACTION - LA C.C. Art. 2315.1

84. Plaintiff hereby brings a Survival Action under the Louisiana Survival Statute, LA C.C. Art. 2315.1,

85. Plaintiff claims  all damages recoverable under the Statute, including but not limited to, loss of income both past and future income potential, as well as, pain and suffering prior

to death, and for emotional distress suffered by Ronald Greene from the initiation of the attack upon him until the ultimate time of his death.

## COUNT I: 42 U.S.C. § 1983 EXCESSIVE FORCE

*Trooper Demoss, Master Trooper Hollingsworth Master Trooper York, Captain Peters, Lieutenant Clary, Sergeant McElroy, and Deputy Sheriff Harpin*

86. The preceding paragraphs are incorporated by reference as though laid out fully herein.

87. Trooper Demoss, Master Trooper Hollingsworth Master Trooper York, Captain Peters, Lieutenant Clary, Sergeant McElroy, and Deputy Sherriff Harpin's punching, kicking, beating, use of an Electronic Control Weapon, or other use of force all caused Ronald Greene's mental anguish, pain, agony and untimely death.

88. The actions of Trooper Demoss, Master Trooper Hollingsworth Master Trooper York, Captain Peters, Lieutenant Clary, Sergeant McElroy, and Deputy Sherriff Harpin were intentional, excessive, and objectively unreasonable.

89. Trooper Demoss, Master Trooper Hollingsworth Master Trooper York, Captain Peters, Lieutenant Clary, Sergeant McElroy, and Deputy Sherriff Harpin were acting under color of state law.

90. Plaintiff seeks damages, including for the nature and extent of Decedent's injuries, pre-death pain and suffering, emotional distress, and loss of life and enjoyment of life, as well as all available damages available under the law.

**WHEREFORE**, Plaintiff demands judgment in her favor, and against Defendants pursuant to 42 U.S.C. § 1983, in an amount in excess of One Million Dollars ($1,000,000.00), including interest, delay damages, costs of suit, general and specific damages, including both survival and wrongful death damages, punitive and exemplary damages as provided by law, attorneys' fees under U.S.C. 1985 and 1988, and any other remedies legally appropriate.

## COUNT II: 42 U.S.C. BYSTANDER LIABILITY
*Trooper Demoss, Master Trooper Hollingsworth Master Trooper York, Captain Peters,*
*Lieutenant Clary, Sergeant McElroy, and Deputy Sherriff Harpin*

91. The preceding paragraphs are incorporated by reference as though laid out fully herein.

92. Trooper Demoss, Master Trooper Hollingsworth Master Trooper York, Captain Peters, Lieutenant Clary, Sergeant McElroy, and Deputy Sherriff Harpin's observed Ronald Greene being beaten, smothered, choked, and abused with an Electronic Control Weapon, which caused Ronald Greene's mental anguish, pain, agony and untimely death.

93. Trooper Demoss, Master Trooper Hollingsworth Master Trooper York, Captain Peters, Lieutenant Clary, Sergeant McElroy, and Deputy Sherriff Harpin's knew that Ronald Greene being beaten, smothered, choked, and abused with an Electronic Control Weapon, was unconstitutional but failed to intervene despite having the opportunity to do so.

94. Plaintiff seeks damages, including for the nature and extent of Decedent's injuries, pre-death pain and suffering, emotional distress, and loss of life and enjoyment of life, as well as all available damages available under the law.

**WHEREFORE**, Plaintiff demands judgment in her favor, and against Defendants pursuant to 42 U.S.C. § 1983, in an amount in excess of One Million Dollars ($1,000,000.00), including interest, delay damages, costs of suit, general and specific damages, including both survival and wrongful death damages, punitive and exemplary damages as provided by law, attorneys' fees under U.S.C. 1985 and 1988, and any other remedies legally appropriate.

## COUNT III 42 U.S.C. § 1983 DENIAL OF ACCESS TO COURTS
*Trooper Demoss, Master Trooper Hollingsworth Master Trooper York, Captain Peters,*
*Lieutenant Clary, Sergeant McElroy, Colonel Kevin Reeves, Deputy Sherriff Harpin, and Does*
*1-5*

95. The preceding paragraphs are incorporated by reference as though laid out fully herein.

96. Trooper Demoss, Master Trooper Hollingsworth Master Trooper York, Captain Peters, Lieutenant Clary, Sergeant McElroy, Colonel Reeves,  Deputy Sherriff Harpin, and Does 1-5 conspired to misrepresent, conceal, and obfuscate the unconstitutional conduct that caused Ronald Greene's mental anguish, pain, agony and untimely death.

97. Trooper Demoss, Master Trooper Hollingsworth Master Trooper York, Captain Peters, Lieutenant Clary, Sergeant McElroy, Colonel Reeves,  Deputy Sherriff Harpin, and Does 1-5 acted individually and in concert to misrepresent, conceal, and obfuscate the unconstitutional conduct that caused Ronald Greene's mental anguish, pain, agony and untimely death.

98. The actions of Trooper Demoss, Master Trooper Hollingsworth Master Trooper York, Captain Peters, Lieutenant Clary, Sergeant McElroy, Trooper Reeves, Colonel Reeves, Deputy Sherriff Harpin, and Does 1-5 intentionally concealed from the public and Plaintiff the true facts about Greene's death, which would form the basis for Plaintiff's claims for redress.

99. Plaintiff has a property interest in pursuing claims on behalf of Ronald Greene for the violation of his constitutionally-protected rights.

100. The misrepresentation, concealment, and obfuscation of these facts led to an ongoing delay in Plaintiff knowing the truth and a delay in instituting this action in violation of the First and Fourteenth Amendments.

**WHEREFORE**, Plaintiff demands judgment in her favor, and against Defendants pursuant to 42 U.S.C. § 1983, in an amount in excess of One Million Dollars ($1,000,000.00), including interest, delay damages, costs of suit, general and specific damages, including both survival and wrongful death damages, punitive and exemplary

damages as provided by law, attorneys' fees under U.S.C. 1985 and 1988, and any other remedies legally appropriate.

## COUNT IV: BATTERY

*Trooper Demoss, Master Trooper Hollingsworth Master Trooper York, Captain Peters, Lieutenant Clary, Sergeant McElroy, and Deputy Sherriff Harpin*

101.     The preceding paragraphs are incorporated by reference as though laid out fully herein.

102.     Trooper Demoss, Master Trooper Hollingsworth Master Trooper York, Captain Peters, Lieutenant Clary, Sergeant McElroy, and Deputy Sherriff Harpin beat, smothered, choked, and abused Ronald Greene with an Electronic Control Weapon,  which caused him mental anguish, pain, agony and untimely death.

103.     The actions of Trooper Demoss, Master Trooper Hollingsworth Master Trooper York, Captain Peters, Lieutenant Clary, Sergeant McElroy, and Deputy Sherriff Harpin were intentional, harmful, and offensive.

104.     Plaintiff seeks damages, including for the nature and extent of Decedent's injuries, pre-death pain and suffering, emotional distress, and loss of life and enjoyment of life, as well as all available damages available under the law.

**WHEREFORE**, Plaintiff demands judgment in her favor, and against Defendants in excess of One Million Dollars ($1,000,000.00), including interest, delay damages, costs of suit, general and specific damages, including both survival and wrongful death damages, punitive and exemplary damages as provided by law.

## COUNT V: PRODUCT LIABILITY
*Corporate John Does 1-3*

105.    The preceding paragraphs are incorporated by reference as though laid out fully

herein.

106.    John Doe Corporations 1-3 are the manufacturer, distributor, marketer, and

training providers of Electronic Control Weapons in the Louisiana State Police

Department and Union Parish Sherri's Office.

107.    John Doe Corporations hold their Electronic Control Weapons out as a safe tool

for Law Enforcement to use.

108.    John Doe Corporations were aware of that cardiac arrest and death are substantial

risks associated with Electronic Control Weapons.

109.    Nonetheless, John Doe Corporations continued to market and sell Electronic

Control Weapons.

110.    Upon information and belief, an Electronic Control Weapon produced by John

Doe Corporations was used during the lethal assault of Ronald Greene.

111.    As a result of the assault and defects or inherent dangers of the Electronic Control

Weapons produced by John Doe Corporation, Ronald Greene died from cardiac arrest.

112.    Plaintiff seeks damages, including for the nature and extent of Decedent's

injuries, pre-death pain and suffering, emotional distress, and loss of life and enjoyment

of life, as well as all available damages available under the law.

**WHEREFORE**, Plaintiff demands judgment in her favor, and against Defendants in excess

of One Million Dollars ($1,000,000.00), including interest, delay damages, costs of suit, general

and specific damages, including both survival and wrongful death damages, punitive and

exemplary damages as provided by law.


Respectfully Submitted,


/S/ Mark V. Maguire
Mark V. Maguire, Esquire
McELDREW YOUNG  PURTELL
123 South Broad Street
Philadelphia, PA 19109



/S/ Ronald Haley
Ronald Haley, Esquire
HALEY AND ASSOCIATES
8211 Goodwood Blvd Ste E,
Baton Rouge, LA 70806