UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

**TAYLA GREENE**                                    **CASE NO. 3:20-CV-00578**

**VERSUS**                                          **JUDGE TERRY A. DOUGHTY**

**DAKOTA DEMOSS, ET AL.**                           **MAG. JUDGE KAREN L. HAYES**

<u>REPORT AND RECOMMENDATION</u>

Before the undersigned Magistrate Judge, on reference from the District Court, are two multi-component motions:  1) a Rule 12(b) motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted, or alternatively for more definite statement [doc. # 20], as supplemented [doc. # 31], filed by defendant, Trooper Dakota DeMoss; and 2) a Rule 12(b) motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted, or alternatively for more definite statement [doc. # 22], as supplemented [doc. # 30], filed by defendants, Master Trooper Kory York, Sergeant Floyd McElroy, Lieutenant John Clary, and Captain John Peters.  The motions are opposed.  For reasons assigned below, it is recommended that the motions be GRANTED-IN-PART and DENIED-IN-PART.

<u>Background</u>

On May 6, 2020, plaintiff Tayla Greene filed the instant wrongful death and survival action pursuant to 42 U.S.C. § 1983 against various law enforcement personnel and other entities to recover damages for the May 10, 2019, death of her father, Ronald Greene (hereinafter, "Greene"), following an attempted traffic stop that ended in tragedy.  (Compl.).  Plaintiff filed the suit on her own behalf and as the personal representative of her father's estate against the following law enforcement officers:  Trooper Dakota DeMoss, Master Trooper Chris

Hollingsworth, Master Trooper Kory York, Captain John Peters, Lieutenant John Clary, Sergeant Floyd McElroy, and Deputy Sheriff Christopher Harpin, plus three unknown manufacturers of the electronic control weapons used by the officers:  John Doe Corporations 1-3.  *Id*.  She asserted two counts against the officers under 42 U.S.C. § 1983 for excessive force and bystander liability, plus one state law count against them for battery.  *Id*.  Plaintiff also included a products liability claim against the unknown manufacturers of the electronic control devices used by the officers.  *Id*.  Plaintiff requested an award of $1 million for each count, plus punitive and exemplary damages under § 1983, attorney's fees under 42 U.S.C. §§ 1983 and 1988, and interest.  *Id*.

In response to motions to dismiss filed by defendants, *see* discussion, *infra*, plaintiff filed an amended complaint on October 5, 2020.  (First Amend. Compl. (hereinafter, "FAC").  An "amended complaint supersedes the original complaint and renders it of no legal effect, unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading."  *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (citing *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 508 (5th Cir.1985)).  Here, there is no indication that the amended complaint adopted or referenced the earlier pleading.  Therefore, the sole, operative complaint before the court is the amended complaint, to which the court will apply the arguments raised by defendants' motions.[1]

According to the FAC, at around 12 a.m. on May 10, 2019, decedent Ronald Greene was driving a silver Toyota CH-R on U.S. Highway 80 in Monroe, Louisiana when Trooper DeMoss

---

[1] The court may consider a motion to dismiss "as being addressed to the amended pleading."  *Rountree v. Dyson*, 892 F.3d 681, 683–84 (5th Cir.2018).

attempted to initiate a traffic stop for an unspecified traffic violation.  (FAC, ¶¶ 24-26).  In lieu of stopping his vehicle, Greene sped away and a pursuit ensued.  *Id.*, ¶ 27.  Eventually Greene's car came to a rest along Louisiana Highway 143 after it swerved, spun, and crashed into a wooded area.  *Id.* ¶ 28-32.  Greene's vehicle only sustained moderate damage to the rear driver's side, and he was able to exit the vehicle without assistance.  *Id.*  Greene was uninjured and could walk, speak, and otherwise function in a healthy manner after the crash.  *Id.*

Almost immediately thereafter, Louisiana State Police ("LSP") officers, Dakota DeMoss and Chris Hollingsworth arrived on the scene.  *Id.*, ¶ 33.  Shortly thereafter, LSP officers, John Peters, John Clary, Floyd McElroy and Kory York arrived, as did Union Parish Sheriff's deputy Christopher Harpin.  *Id.*, ¶ 34.

Greene exited his vehicle and tried to apologize to the officers for his failure to pull over.  *Id.*  ¶ 35-37.  Nevertheless, the officers pinned Greene to the ground.  *Id.*  Greene begged the officers to stop and repeatedly conveyed his contrition.  *Id.*  However, each of the officers "beat, smothered, and choked Greene," notwithstanding that he had surrendered, was not resisting, was in custody, and posed no threat to the officers.  *Id.*, ¶¶ 38-45.

Despite his surrender, the officers also used an electronic control weapon at least three times on Greene, which resulted in an attack on his heart with massive amounts of electricity.  *Id.*, ¶ 46.  Plaintiff does not know which officer used the electronic control weapon because the LSP and LSP Colonel Kevin Reeves refused to produce or release bodycam footage, dashboard cam footage, discharge logs, use of force reports or any number of investigative materials that would identify who used lethal force.  *Id.*, ¶ 47.

Plaintiff further alleged that each of the defendant officers at the scene watched the others

"beat, smother, choke, and use an electronic control weapon on Greene" even though he had

surrendered, was not resisting, and posed no threat to the officers.  *Id*., ¶¶ 48-55.

The force used against Greene left him beaten, bloodied, and in cardiac arrest.  *Id.*, ¶ 56.

At 12:29 a.m., an officer called for an ambulance.  *Id*., ¶ 57.  When the emergency medical

technicians ("EMT") arrived at 12:51 a.m., they found Greene covered in blood, with multiple

"TASER" barbs attached to his body.  *Id*., ¶¶ 58-59.  He was unresponsive and in cardiac and

respiratory arrest.  *Id*.  EMT transported Greene's lifeless body to the hospital, where they

arrived at 1:25 a.m.  *Id*.  He was pronounced dead as of 1:27 a.m.  *Id*., ¶¶ 60-61.

 An initial report from the hospital listed Greene's cause of death as cardiac arrest, plus a

diagnosis of an "unspecified injury of head."  *Id*., ¶ 62.  Trooper Hollingsworth later confirmed

that the vicious beating of Greene was inflicted by, and in the presence of, multiple officers.  *Id*.,

¶ 64.  An autopsy found multiple signs of recent trauma, blunt force injuries to the head and face,

together with facial lacerations, abrasions, and contusions.  *Id*. ¶ 68.  There also were blunt force

injuries to the extremities, including the knees.  *Id*.

Plaintiff contends that the officers tried to cover up the cause of Greene's death by, *inter

alia*, telling Greene's family that he had been killed immediately after hitting a tree.  *Id*., ¶ 65.

In addition, for more than fourteen months, Colonel Reeves actively endeavored to portray

Greene's death as a car accident, refusing to allow any information about the incident to become

public.  *Id*., ¶ 75.  Reeves conspired with the other officers to misrepresent, conceal, and

obfuscate the actual nature of their unconstitutional conduct.  *Id*., ¶ 76.

In the FAC, plaintiff joined Colonel Kevin Reeves and Does 1-5 as defendants, and

added a First Amendment denial-of-access to courts claim under 42 U.S.C. § 1983 against all

parties, save the unknown weapons manufacturers.  (FAC, ¶¶ 95-100).

On September 14, 2020, defendant, Dakota DeMoss (sometimes referred to by himself as, "Dekota DeMoss") filed the instant motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted, or alternatively for more definite statement [doc. # 20].  DeMoss asserted that plaintiff sued him in his official capacity, which was the same as suing the state agency he worked for, and thus, plaintiff's claims were barred by the Eleventh Amendment.  DeMoss further argued that, in his official capacity, he was not a person capable of being sued under § 1983.

DeMoss also invoked qualified immunity in response to plaintiff's § 1983 claims against him in his individual capacity.  Furthermore, in the event that the court declined to grant the motion to dismiss, defendant petitioned the court to require plaintiff to file a more definite statement "to meet plaintiff's *Iqbal* pleading burden regarding qualified immunity."

Also on September 14, 2020, defendants, Kory York, Floyd McElroy, John Clary, and John Peters, filed their own motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted, or alternatively for more definite statement [doc. # 22]. The compound motion largely tracked the motion filed by DeMoss. Defendants raised Eleventh Amendment immunity insofar as plaintiff sued them in their official capacities.  They also invoked qualified immunity in response to plaintiff's § 1983 claims against them in their individual capacities.  Defendants further emphasized that plaintiff did not make any individualized allegations against them in her original complaint.  Moreover, defendants argued that plaintiff's state law claims against them were not made with sufficient particularity. Finally, defendants argued in the alternative that plaintiff's complaint did not give them fair

notice of her claims and thus, plaintiff should be ordered to file a more definite statement so defendants could frame a responsive pleading.

On September 14, 2020, defendant, Christopher Hollingsworth, filed a separate motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted, or alternatively for more definite statement [doc. # 23].  The motion largely echoed the arguments raised by his co-defendants, but with some nuances.  For example, Hollingsworth argued that to plead a § 1983 claim plaintiff had to set forth facts with sufficient factual detail and particularity analogous to a fraud claim.  He also argued that plaintiff failed to state a claim for *negligent* wrongful death and survival.

In the wake of defendants' motions, plaintiff filed her FAC, which besides adding parties and claims as described above, also clarified that her claims against the law enforcement officers were brought against them in their "personal," not official capacities.  (FAC).  In light of these changes wrought by the amended complaint, the court ordered defendants to either withdraw their motions to dismiss or otherwise supplement their motions to tailor it to the amended pleading.  (Oct. 6, 2020, Order [doc. # 27]).

On October 26, 2020, defendant, DeMoss [doc. # 31], and defendants, York, McElroy, Clary, and Peters [doc. # 30], supplemented their pending motions to dismiss whereby they either deleted their arguments directed at plaintiff's official capacity claims or conceded that those arguments were moot.  Defendants also re-urged their prior arguments regarding the sufficiency of plaintiff's re-pled claims, and argued that plaintiff's new denial-of-access-to-courts claim was subject to dismissal for failure to state a claim for relief.

Defendant, Hollingsworth, did not withdraw or supplement his pending motion to

dismiss.  Instead, on October 26, 2020, his attorney filed a suggestion of death in the record, stating that Hollingsworth had passed away on September 22, 2020.  (Suggestion of Death [doc. # 33]).  Although the Clerk of Court terminated Hollingsworth as a party based on the suggestion of death filed in the record, it appears that this action may be premature.  *See* Fed.R.Civ.P. 25(a)(1) (if a claim is not extinguished upon a party's death and no motion to substitute is made within 90 days after service of the statement of death, *then* the action against the decedent must be dismissed).  Hollingsworth's motion to dismiss remains pending, however.

On November 24, 2020, plaintiff filed a motion to substitute Hollingsworth's legal successor, Darby Hollingsworth, as a defendant in this matter in lieu of her decedent.  [doc. # 44].  That motion is not yet ripe.  In light of Hollingsworth's failure to supplement his motion as ordered, and the lack of any opposition filed by plaintiff to the motion, coupled with the uncertainty of Hollingsworth's continued status in this matter, the court will defer consideration of Hollingsworth's motion.

On November 16, 2020, plaintiff filed her responses to the two motions to dismiss and/or for more definite statement filed by defendants, DeMoss, York, McElroy, Clary, and Peters. [doc. #s 37 & 38].  In the event that the court found that her FAC was not sufficiently detailed, plaintiff asked the court to permit her to engage in limited discovery to obtain the video and investigative materials that were in the LSP's possession.  Plaintiff emphasized that her ability to plead more detailed facts had been frustrated and stymied by the LSP and the Union Parish District Attorney's refusal to provide her with evidence regarding the sequence of events that led to Greene's tragic death.

On November 23, 2020, defendants filed reply briefs in support of their pending motions.

[doc. #s 42 & 43].  The matter is ripe.

### Standard of Review[2]

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted."  Fed.R.Civ.P. 12(b)(6).  A pleading states a claim for relief, *inter alia*, when it contains a "short and plain statement . . . showing that the pleader is entitled to relief . . ."  Fed.R.Civ.P. 8(a)(2).  Circumstances constituting fraud or mistake, however, must be alleged with particularity.  Fed.R.Civ.P. 9(b).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007)).  A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.  Plausibility* does not equate to *possibility* or *probability*; it lies somewhere in between.  *See Iqbal, supra*.  Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim.  *See Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965.  Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Iqbal, supra*.  A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8.  *Id*.  "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim."  *City of Clinton,*

---

[2] In light of defendants' withdrawal of their Rule 12(b)(1) arguments and/or concession that those arguments are moot in the wake of plaintiff's amended complaint, the court will deny that component of the Rule 12(b) motions as moot.

8

*Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148 (5th Cir. 2010).

"The notice pleading requirements of Federal Rule of Civil Procedure 8 and case law do not require an inordinate amount of detail or precision." *Gilbert v. Outback Steakhouse of Florida Inc.*, 295 Fed. Appx. 710, 713 (5th Cir. 2008) (citations and internal quotation marks omitted). Further, "a complaint need not pin plaintiff's claim for relief to a precise legal theory. Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of [his] legal argument." *Skinner v. Switzer*, 562 U. S. 521, 131 S. Ct. 1289, 1296 (2011). Indeed, "[c]ourts must focus on the substance of the relief sought and the allegations pleaded, not on the label used." *Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 452 (5th Cir. 2013) (citations omitted). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (quoting *Bell Atl.*, 127 S. Ct. at 1958).

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra*. (citation omitted). A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable, and that recovery is unlikely. *Twombly, supra*. Nevertheless, a court is compelled to dismiss an otherwise well-pleaded claim if it is premised upon an invalid legal theory. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827 (1989).

When considering a motion to dismiss, courts generally are limited to the complaint and its proper attachments. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008)

(citation omitted).  However, courts may rely upon "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" – including public records. *Dorsey, supra*; *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (citation omitted) (proper to take judicial notice of matters of public record).

<u>Analysis</u>

## I.        Individual Liability under § 1983

Section 1983 provides that any person who, under color of state law, deprives another of "any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ." *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citing 42 U.S.C. ' 1983).  Section 1983, however, does not create any substantive rights; it simply provides a remedy for the rights designated therein.  *Id.*  "Thus, an underlying constitutional or statutory violation is a predicate to liability under ' 1983."  *Id.*  (citation omitted).

To state a cognizable claim for relief under 42 U.S.C. § 1983, "a plaintiff must plead two—and only two—allegations . . . First, the plaintiff must allege that some person has deprived him of a federal right.  Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law."  *Arnold v. Williams*, 979 F.3d 262, 266-67 (5th Cir. 2020) (citation and internal quotation marks omitted).

However, when, as here, plaintiff seeks money damages from government officials in their individual capacities under ' 1983, the affirmative defense of qualified immunity is available to protect defendants "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would

have known." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 815 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982)).  The qualified immunity doctrine balances two often conflicting interests C "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id*.  As such, "[t]he protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Id*. (citations and internal quotation marks omitted).

In effect, qualified immunity "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir.2000) (citing *Malley v. Briggs,* 475 U.S. 335, 343, 341, 106 S.Ct. 1092 (1986) (internal quotation marks omitted).

Qualified immunity is nominally characterized as an affirmative defense.  However, once raised by defendants, it devolves upon the plaintiff to negate the defense by showing that the officials' conduct violated clearly established law.  *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir.2008) (citation omitted).  Plaintiff's burden is two-pronged.  *Club Retro LLC v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (quoted sources omitted).  First, plaintiff must demonstrate that defendant(s) violated a constitutional right under current law.  *Id*.  "Second, [plaintiff] must claim that the defendant[s'] actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of." *Id*.  (quoted source and internal quotation marks omitted).  The courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in

light of the circumstances of the particular case at hand."  *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009) (citation omitted).

A law is clearly established when there exists Acontrolling authorityCor a "robust consensus of persuasive authority" "that defines the contours of the right in question with a high degree of particularity."  *Hogan v. Cunningham*, 722 F.3d 725, 735 (5th Cir.2013).  Although a case directly on point is not required, "existing precedent must have placed the statutory or constitutional question *beyond debate*."  *Id.*  (citations and internal quotation marks omitted). Nonetheless, there is the "rare possibility that, in an obvious case, analogous case law is not needed because the unlawfulness of the [challenged] conduct is sufficiently clear even though existing precedent does not address similar circumstances."  *Joseph v. Bartlett*, No. 19-30014, 2020 WL 6817823, at *6 ___ F.3d ____, (5th Cir. Nov. 20, 2020) (citations and internal quotation marks omitted).

In the end, the question becomes whether the right is "sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right."  *Hogan, supra* (citations and internal quotation marks omitted).  Because it is plaintiff's burden to establish that the challenged conduct violated clearly established law, the district court may, but is by no means obliged to undertake the clearly established law analysis on its own.  *See Joseph, supra.*

When, as here, a defendant pleads qualified immunity in a motion to dismiss, the plaintiff need not "exceed the short-and-plain-statement standard of Rule 8."  *Arnold, supra* (citation omitted).  Instead, "a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is

liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir.2012).  In other words, plaintiff must plead qualified immunity facts with the "minimal specificity" required by *Twombly* and *Iqbal*. *Arnold, supra* ("an assertion of qualified immunity in a defendant's answer or motion to dismiss does not subject the complaint to a heightened pleading standard.").

The court will address each of plaintiff's claims, in turn.  Furthermore, "qualified immunity claims should be addressed separately for each individual defendant."  *Darden v. City of Fort Worth, Texas*, 880 F.3d 722, 731 (5th Cir.2018) (citation omitted), *cert. denied sub nom. City of Fort Worth, Tex. v. Darden*, ___ U.S. ___, 139 S.Ct. 69 (2018); *see also Meadours v. Ermel*, 483 F.3d 417, 421–22 (5th Cir.2007) (overruling district court's decision to consider officers' conduct collectively, merely because they acted in unison).  However, "[s]eparate consideration does not require courts to conduct a separate analysis for each officer in those cases where their actions are materially indistinguishable, it merely requires them to *consider* each officer's actions."  *Meadours*, 483 F.3d at 422 n.3.

a)  Excessive Force

The Supreme Court has proclaimed that "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard . . ."  *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871 (1989).  Of course, the protections of the Fourth Amendment extend to the states pursuant to the Fourteenth Amendment.  *Dunaway v. New York*, 442 U.S. 200, 207, 99 S.Ct. 2248, 2253-2254 (1979) (citation omitted).

13

"A person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, by means of physical force or show of authority, terminates or restrains his freedom of movement, through means intentionally applied." *Brendlin v. California*, 551 U.S. 249, 127 S.Ct. 2400, 2405 (2007) (citing *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868 (1968) (internal quotation marks omitted).

To support his excessive force claim, plaintiff must establish: "(1) injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir.2007) (citations omitted). By nature, excessive force claims are fact-intensive and dependent on the circumstances of each case. *Hanks v. Rogers*, 853 F.3d 738, 745 (5th Cir.2017) (citations omitted). Factors that the court should consider include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865 (1989)) (internal quotation marks omitted).

The court must analyze the claim from the perspective of a reasonable officer on the scene. *Id.* (citation omitted). Thus, the "inquiry is whether the officer's actions were objectively reasonable in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation." *Id.* (citations and internal quotation marks omitted). Furthermore, "the plaintiff must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995).

Applying the foregoing considerations here, the court finds that Greene's prior flight

14

from officers in a vehicle was a serious and potentially dangerous crime.  According to the FAC, however, Greene exited the vehicle after troopers DeMoss, Peters, Clary, McElroy, and York arrived and began to apologize to them.  Nonetheless, the officers proceeded to pin him to the ground.  Thereafter, even though Greene had surrendered and was not resisting, DeMoss, Hollingsworth, York, Clary, McElroy, and Peters each beat, smothered and choked him.  One or more of the defendants also used an electronic control weapon against Greene at least three times.

The fact that Greene had exited the vehicle and apologized to the officers suggests that he did not pose an immediate threat to the safety of the officers or anyone else.  There also are no allegations by plaintiff that once Greene exited the vehicle he was actively resisting arrest or trying to evade arrest by flight.  Certainly, once the officers pinned Greene to the ground, he was not a risk of flight or any threat to them or others.  Moreover, the FAC unequivocally alleged that Greene had surrendered and was not resisting.  Thereafter, however, DeMoss, Peters, Clary, McElroy, and York all inexplicably beat, smothered, and choked Greene.  One or more of these officers (including Hollingsworth and Harpin) also used an electronic control weapon against Greene.  There are no facts in the FAC to suggest that the use of an electronic control weapon was needed.[3]

---

[3] In contrast to plaintiff's allegations that each and every defendant beat, smothered, and choked Greene, she is unable to allege at this time which defendant(s) used the electronic control device against him.  However, the electronic control device use is but one component of plaintiff's excessive force claim against defendants.  Furthermore, another division of this court declined to grant summary judgment in favor of defendant officers where plaintiff was unable to identify which officer struck him.  *See Morris v. Pierce*, No. 07-0080, 2008 WL 4287967, at *6 (W.D. La. Sept. 17, 2008).  If, as urged by defendants, "further specific details were required to be specifically pled at this stage of the case, essentially no case of this type could ever survive a motion to dismiss, because the necessary facts would be in the sole possession of the defendant."

15

Furthermore, it was clearly established by May 2019 that an officer cannot immediately resort to blows and/or electronic control devices to obtain an arrestee's compliance without first attempting to use less violent means.  *See Newman v. Guedry*, 703 F.3d 757, 763 (5th Cir.2012); *Darden, supra* (officer cannot throw a non-resisting suspect to the ground and twice shock him with a taser whilst he is being beaten by another officer); *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir.2008) (clearly established that an officer cannot slam an individual's face into a vehicle when the individual was not resisting arrest or attempting to flee).

In a recent decision, the Fifth Circuit reaffirmed that by 2013 it had long been established that officers engage in excessive force when they physically strike a suspect who is not resisting arrest.  *Joseph, supra*.  Consequently, in *Joseph*, the court experienced little difficulty in concluding that officers were not entitled to qualified immunity where they struck, punched, kicked, and/or tased an individual who was a fetal position, not suspected of committing a crime, not posing a threat to anyone, and not actively resisting arrest.  *Joseph, supra*.

Upon consideration of the foregoing authority, the court finds that in May 2019, every reasonable officer would have understood that they could not beat, smother, choke, and/or use an electronic control device on a non-resisting suspect who was subdued and posing no threat to anyone.  Accordingly, defendants, DeMoss, Peters, Clary, McElroy, and York, are not entitled to qualified immunity as to plaintiff's claims for excessive force against them.[4]

b)  Bystander Liability

The Fifth Circuit has recognized that an officer may be liable under § 1983 pursuant to a

---

*Diamond Services Corp. v. Oceanografia, S.A.*, 2011 WL 938785 (W.D. La. Feb. 9, 2011).
[4] The court has considered the actions of each officer.  *Meadours*, supra.

theory of bystander liability where the officer "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir.2013) (citations omitted). Furthermore, it was clearly established by 2017 that "an officer could be liable as a bystander in a case involving excessive force if he knew a constitutional violation was taking place and had a reasonable opportunity to prevent the harm." *Hamilton v. Kindred*, 845 F.3d 659, 663 (5th Cir.2017).

Here, plaintiff alleged facts showing that defendants, DeMoss, Peters, Clary, McElroy, and York each participated in beating, choking, and smothering Greene while he was not resisting or posing a threat to anyone. *See* discussion, *supra*. Given each of these officer's personal participation in the unconstitutional use of force against Greene that no reasonable officer could have condoned, it certainly is plausible that each and every one of these defendants knew that his fellow officers were engaging in unconstitutional conduct. Furthermore, because each officer allegedly participated in the use of excessive force against Greene, this means that each officer necessarily was close enough to Greene that he could have opted to cease harming Greene himself, and instead intervened to protect Greene from the actions of the other officers. Of course, DeMoss, Peters, Clary, McElroy, and York simply watched the other officers beat, smother, choke, and use electronic control devices against Greene without intervening.

The court finds that in May 2019, every reasonable officer would have understood that they could not stand by and idly watch or fail to intervene while another officer beat, smothered, choked, and/or used an electronic control device against a non-resisting suspect who was subdued and posing no threat to anyone. Accordingly, defendants, DeMoss, Peters, Clary,

McElroy, and York, are not entitled to qualified immunity as to plaintiff's claim for bystander liability against them.[5]

   c) <u>Access to Courts</u>

Plaintiff contends that defendants, DeMoss, York, Peters, Clary, and McElroy, plus others, conspired to misrepresent, conceal, and obfuscate the unconstitutional conduct that caused Greene's injuries and death.  The Fifth Circuit has recognized "a right of access to the courts, which is founded in the Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, and the Fifth and Fourteenth Amendment Due Process Clauses." *Waller v. Hanlon*, 922 F.3d 590, 601 (5th Cir.2019) (citation omitted).

Denial-of-access claims can be forward or backward-looking, with the former alleging "that systemic official action frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time," whereas backward-looking claims allege that an official action has "caused the loss or inadequate settlement of a meritorious case, the loss of an opportunity to sue, or the loss of an opportunity to seek some particular order of relief." *Waller, supra* (citing *Christopher v. Harbury*, 536 U.S. 403, 413-14, 122 S.Ct. 2179 (2002)).

In response to defendants' motions, plaintiff analyzed her denial-of-access claim solely as a backward-looking claim, which requires her to identify "(1) a nonfrivolous underlying claim; (2) an official act that frustrated the litigation of that claim; and (3) a remedy that is not otherwise available in another suit that may yet be brought." *Waller*, 922 F.3d at 602 (citation omitted).  Even assuming that plaintiff can meet the first two requirements of a backward-looking claim, she has not shown what relief defendants' alleged actions have cost her. *See*

---

[5] The court has considered the actions of each officer. *Meadours*, supra.

*Waller, supra.*

As in *Waller*, plaintiff is actively and, so far, successfully litigating her excessive force and bystander liability claims against these and other defendants.  Furthermore, as recommended here, plaintiff has survived defendants' pleadings-stage invocation of qualified immunity.  *See* discussion, *supra*.  Until plaintiff's claims against defendants suffer "some concrete setback traceable to the defendants' alleged coverup, [her] allegation that the defendants impaired [her] effort to bring that claim is no more than speculation about an event that may or may not come to pass."  *Waller, supra* (citation omitted).  Furthermore, delay in bringing a lawsuit, without a showing of further harm, does not suffice.  *Id.*

In sum, plaintiff's FAC lacks facts to support a necessary element of her backward-looking denial-of access claim.  *See Waller, supra.*  However, because it is possible that such a claim could become viable in the future should her excessive force and/or bystander liability claims "go south in later stages of this litigation," the dismissal of the denial-of-access claim should be without prejudice.  *Waller, supra.*

Although plaintiff also brought her § 1983 denial-of-access claim against defendants Chris Hollingsworth, Kevin Reeves, Christopher Harpin, and Does 1-5, they did not join in the instant motion or seek dismissal of this claim.  However, where a defending party establishes that a plaintiff has no cause of action, this defense should inure to similarly situated defendants.  *See Lewis v. Lynn,* 236 F.3d 766, 768, 236 F.3d 766 (5th Cir. 2001) (citations omitted).  Accordingly, the court *sua sponte* should dismiss, without prejudice, plaintiff's denial-of-access claim in its entirety, as to all defendants.[6]

---

[6] The court possesses the inherent authority to dismiss a party sua sponte.  *McCullough v.*

19

## II.    State Law Claim(s)

At the outset, the court observes that plaintiff's assertion of a wrongful death and survival action merely represents a means or vehicle for plaintiff to recover damages under state and federal law for injuries that she sustained as a result of her father's death as well as for injuries that he sustained.  *See* Louisiana Civil Code Articles 2315.2 and 2315.1; *Pluet v. Frasier*, 355 F.3d 381, 383B84 (5th Cir.2004) (a party must have standing under the state wrongful death or survival statutes to bring a claim under 42 U.S.C. " 1981, 1983, and 1988).  Thus, the viability of the wrongful death and survival action is dependent upon the underlying tort or constitutional claim.

In her FAC, plaintiff asserted a claim for battery against defendants, DeMoss, York, Peters, Clary, McElroy, et al.  Under Louisiana law, a battery is a harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact. *Caudle v. Betts*, 512 So.2d 389, 391 (La.1987).  Furthermore, "[t]he intention need not be malicious nor need it be an intention to inflict actual damage. It is sufficient if the actor intends to inflict either a harmful or offensive contact without the other's consent."  *Id*.

Moreover, under Louisiana law, excessive force claims are analyzed under a reasonableness standard similar to that used to evaluate § 1983 excessive force claims. *Deshotels v. Marshall*, 454 Fed. Appx. 262, 269 (5th Cir.2011) (citing *Kyle v. City of New Orleans,* 353 So.2d 969, 972–73 (La.1977).  Thus, "[w]hether the force used

---

*Lynaugh*, 835 F.2d 1126, 1127 (5th Cir. 1988) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)); *McCoy v. Wade*, 2007 WL 1098738, *1 (W.D. La. Mar. 12, 2007) (the report and recommendation itself provides adequate notice to the parties); *Thomas v. Texas Dept. of Family and Protective Services*, 427 Fed. Appx. 309 (5th Cir. 2011) (sua sponte dismissal on 11th Amendment grounds).

is reasonable depends upon the totality of the facts and circumstances in each case." *Id.* (citation omitted).  Pertinent factors to be considered include:  "the known character of the arrestee, the risks and dangers faced by the officers, the nature of the offense involved, the chance of the arrestee's escape if the particular means are not employed, the existence of alternative methods of arrest, the physical size, strength, and weaponry of the officers as compared to the arrestee, and the exigencies of the moment." *Id.*

Given the similarity between these factors and those used to evaluate § 1983 excessive force claims, the court finds that plaintiff has alleged sufficient facts to support a plausible state law claim for battery/excessive force against defendants, DeMoss, York, Peters, Clary, and McElroy for the same reasons the court found that these officers' use of force was unreasonable under § 1983.  *See* discussion, *supra*; *Deshotels*, *supra* (utilizing excessive force analysis under the Fourth Amendment to reach the same outcome under the parallel state law claim).

## III.    Motion for More Definite Statement

Defendants alternatively contend that the court should order plaintiff to amend her complaint to provide a more definite statement.  Federal Rule of Civil Procedure 12(e) provides, in relevant part, that

> [a] party may move for a more definite statement of a pleading to which a
> responsive pleading is allowed but which is so vague or ambiguous that the party
> cannot reasonably prepare a response.  The motion must be made before filing a
> responsive pleading and must point out the defects complained of and the details
> desired . . .

Fed.R.Civ.P. 12(e).

Rule 12(e) is not intended to be used as a vehicle for discovery or to frustrate Rule 8(a)(2)'s minimal pleading requirements by compelling plaintiff to amend his complaint when it otherwise suffices to withstand a motion to dismiss.  *Mitchell v. E-Z Way Towers, Inc.*, 269 F.2d

126, 132 (5th Cir. 1959).  Furthermore, "the class of pleadings that are appropriate subjects for a motion under Rule 12(e) is quite small B the pleading . . . must be so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith or without prejudice to himself."  *Texaco, Inc. v. Louisiana Land & Expl. Co.*, 113 B.R. 924, 940-41 (M.D. La.1990) (citation omitted).

Tellingly, on November 23, 2020, movants' co-defendant, Christopher Harpin, managed to file an answer to the FAC, even though plaintiff's allegations against him overlapped with the allegations against the other defendants.  *See* Answer [doc. # 40].  Indeed, plaintiff's claims and allegations are straight-forward and well-defined.  The court discerns no reason why defendants cannot draw upon their own memory to either admit or deny each allegation.  As the Fifth Circuit stated in *Mitchell, supra*, "we find no statement or testimony . . . to indicate why the defendants, from their knowledge of their own records . . . as well as their operations, would be unable to either admit or deny the allegations concerning . . . violations."  The same result obtains here.

Finally, in the event that the court found that her FAC lacked sufficient specificity to state a claim for relief, plaintiff requested an opportunity to conduct discovery and to file a second amended complaint.  In light of the undersigned's recommended disposition of the motions to dismiss, however, plaintiff's request is moot.

## Conclusion

Drawing upon judicial experience and common sense, the undersigned concludes that the complaint, as amended, states a plausible claim for relief (as to all counts, save her access-to-courts claim), sufficient to afford defendants fair notice of the claims against them, and a reasonable expectation that discovery will reveal relevant evidence to support each of the

elements of plaintiff's claims.  *See Twombly, supra.*

For these reasons,

IT IS RECOMMENDED that the motions to dismiss for lack of subject matter jurisdiction filed by defendant, Trooper Dakota DeMoss [doc. # 20] and defendants, Trooper Kory York, Sergeant Floyd McElroy, Lieutenant John Clary, and Captain John Peters [doc. # 22] be DENIED, as moot.

IT IS FURTHER RECOMMENDED that the motions to dismiss for failure to state a claim upon which relief can be granted filed by defendant, Trooper Dakota DeMoss [doc. # 20] as supplemented [doc. # 31], and defendants, Trooper Kory York, Sergeant Floyd McElroy, Lieutenant John Clary, and Captain John Peters [doc. # 22], as supplemented [doc. # 30] be GRANTED-IN-PART, and that plaintiff's denial-of-access claim be DISMISSED, without prejudice, as to all defendants.

IT IS FURTHER RECOMMENDED that the motions to dismiss for failure to state a claim upon which relief can be granted and alternative motions for more definite statement filed by defendant, Trooper Dakota DeMoss [doc. # 20] as supplemented [doc. # 31], and defendants, Trooper Kory York, Sergeant Floyd McElroy, Lieutenant John Clary, and Captain John Peters [doc. # 22], as supplemented [doc. # 30], otherwise be DENIED.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at

the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.

In Chambers, at Monroe, Louisiana, this 11th day of December 2020.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE

24