## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## MONROE DIVISION

**TAYLA GREENE**                                    **CIVIL ACTION 3:20-CV-00578**

**VERSUS**                                               **JUDGE TERRY A. DOUGHTY**

**DAKOTA DEMOSS, ET AL.**                   **MAG. JUDGE KAYLA D. McCLUSKY**

## DEFENDANT DARBY HOLLINGSWORTH'S MEMORANDUM
## IN SUPPORT OF MOTION FOR PROTECTIVE ORDER

Respectfully submitted,

**JEFF LANDRY**
**ATTORNEY GENERAL**

**BY**: /s/    *P. Scott Wolleson* (#22691)_____
                  Special Assistant Attorney General

**BREITHAUPT DUBOS & WOLLESON** LLC
1811 Tower Drive
Monroe, Louisiana 71201
Telephone: (318) 322-1202
Facsimile: (318) 322-1984
Email: scott@bdw.law


**ATTORNEYS FOR HOLLINGSWORTH**

# <u>TABLE OF CONTENTS</u>

I  **INTRODUCTION**………………………...…………………….………….……...1

II. **LAW & ARGUMENT**………………………...…………………….………….…...3

  A. **The Court Has Inherent Authority, If Not A Duty, To Issue A Gag Order**….4

  B. **The Rules of This Court Prohibit Unfair Trial Publicity**………….……...…...9

  C. **Extrajudicial Statements by Plaintiff's Counsel Violate Rule 3.6**…………...13

III. **CONCLUSION**…..………………….………………………………………….…19

i

# TABLE OF AUTHORITIES

## CASES

*Gannett Co. v. DePasquale*, 443 U.S. 368, 99 S. Ct. 2898, 2904, 61 L.Ed.2d 608 (1979) ..........3

*Gentile v. State Bar of Nevada*, 501 U.S. 1030, 111 S. Ct. 2720, 2745,
115 L.Ed.2d 888 (1991) ……………………...…………………………………….……...….3, 4

*Goode*, 821 F.3d 553, 557 (5th Cir. 2016) …………………………………...……………….……10

*Marceaux v. Lafayette City-Par. Consol. Gov't*, 731 F.3d 488, 492 (5th Cir. 2013) ………………3

*Pennekamp v. Florida,* 328 U.S. 331, 66 S.Ct. 1029, 1043, 1047, 90 L.Ed. 1295
(1946) (Frankfurter, J., concurring) …………………...……………….……………………………4

*Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32 n. 18, 104 S.Ct. 2199,
81 L.Ed.2d 17 (1984) ………………………………………………………………………...….3

*Sheppard v. Maxwell*, 384 U.S. 333, 86 S. Ct. 1507, 1520–21, 16 L.Ed.2d 600 (1966) ……………4

*United States v. Brown*, 218 F.3d 415, 423, 424, 428 (5th Cir. 2000) ………………………3, 4, 5

*U.S. ex reel Stewart v. Louisiana Clinic*, No. CIV.A.99-1767, 2002 WL 32850,
at *2 (E.D. La. Jan. 10, 2002) ……………………………………………………………...........5, 12

## STATUTES

42 U.S.C. §1983………………………………………………..……………………………1, 2

28 U.S.C. § 2071(a)……………………………………………………….……………………...10

## RULES

Fed. R. Civ. P. 83(a)(1) ………………………………………………….……………………10

LR83.2.4W, Uniform Rules for District Courts…………………………………………………10

LR83.2.8W, Uniform Rules for District Courts…………………………………….......10, 11

Rule 3.6 of the Louisiana Rules of Professional Conduct…………………………...……11, 18

Pennsylvania Rules of Professional Conduct, Rule 3.6………………………………..…11, 12

LR83.2(b) of the U.S. Middle District Court of Pennsylvania…………………………….…12

ABA Model Rule 3.6….……………………………………………………………….……4, 11, 12

**MAY IT PLEASE THE COURT:**

Defendant, Darby Hollingsworth, on behalf of her minor son, G.H., requests that this Honorable Court grant her motion for protective order for the following reasons:

I.    **INTRODUCTION**

A simple Google® search for "Ronald Greene" reveals the extensive local, national, and international media coverage of the in-custody death of Mr. Greene. In the media, the life-threatening actions of Mr. Greene during the high-speed pursuit and the medical cause of his in-custody death have been mostly ignored in favor of a more click-worthy narrative that dramatizes the use of force by the on-scene troopers who were required to restrain Mr. Greene for their own personal safety and for the safety of the motoring public. The false narrative surrounding this case has also been fostered by leaks of selective, one-sided, and misleading information by someone with access to investigative material.

Since Plaintiff filed this suit under 42 U.S.C. §1983, Plaintiff and her counsel have capitalized off this extensive media coverage and embarked on a media campaign of their own. On social media, in local news interviews, in national news interviews, and at anti-law enforcement officer ("LEO") protests, Plaintiff's counsel have made repeated public statements referring to Mr. Greene's death as "murder" and the Louisiana State Police investigation as a conspiracy to "cover-up" a "murder." Plaintiff's counsel have even likened Troop F to "slave culture" and its state troopers to "slave chasers" out to punish slaves caught running away from a plantation.

Plaintiff's extrajudicial statements about this case are clearly intended to stir up community outrage, to gain a tactical advantage at trial, and to advance their national political agenda – federal oversight of all in-custody deaths in the United States. However, the false narrative and misleading public statements of Plaintiff's counsel are belied by the scientific evidence, in particular the crash

data and the autopsy findings – which Plaintiff's counsel publicly referred to as "bulls**t."

The cause of Mr. Greene's death will be a central issue at the trial of this §1983 action. A key factual finding to be made by a jury will be whether Mr. Greene's death was caused by LEO use of force or, rather, from the crash-related injuries Mr. Greene sustained in a collision with a tree that ended his 20-minute, 115 mile per hour, life-threatening, vehicular flight from the Louisiana State Police.

At trial, defendants will present scientific evidence that Mr. Greene's death was caused by a crash-related blunt force chest trauma resulting in a fractured sternum and ruptured aorta. In fact, "[t]raumatic aortic rupture is the second most common cause of death in victims of blunt chest trauma from motor vehicle accidents. Death usually (85%) occurs at the crash scene."[1] The jury will decide, with the aid of scientific expert testimony, whether anything on the body worn camera video of Mr. Greene's arrest – which has been released and widely circulated in the media – would have likely caused blunt force chest trauma. Until that time, extrajudicial accusations of "murder" and "cover-up" by Plaintiff's counsel should be prohibited.

Defendant, Darby Hollingsworth, has a fundamental right to a fair trial on the accusations made against her late husband, Master Trooper Chris Hollingsworth, who Plaintiff's counsel has quite publicly branded a "murderer." A fair trial includes a fair and impartial determination of whether any use of force to apprehend and restrain Mr. Greene was justified and whether Mr. Greene's cause of death was crash related or resulted from LEO use of force. Defendants are entitled to a fair trial decided by an impartial jury, not an outcome affected by what Justice Frankfurter once referred to as "trial by newspaper."

---

[1] *See* Mina Mecheal Benjamin, MD, and William Clifford Roberts, MD, **Fatal Aortic Rupture from Nonpenetrating Chest Trauma**, Proc (Bayl Univ Med Cent) 2012;25(2):121–123.

## II.     LAW & ARGUMENT

Plaintiff and her legal team do not have an unfettered right to speak publicly about this case. Plaintiff's counsel have seized every opportunity to use the media to their advantage and smear the Louisiana State Police to promote their anti-LEO agenda. Even when public statements are intended to further their national anti-LEO political agenda, statements by Plaintiff's counsel which disparage the character, reputations, and credibility of other parties to this litigation must be prohibited because of their material prejudicial effect on this proceeding. If permitted to continue, the public comments by Plaintiff's counsel will present a substantial likelihood of prejudicing the court's ability to conduct a fair trial. Politics have no place in the courtroom.

"'Although litigants do not surrender their First Amendment rights at the courthouse door, those rights may be subordinated to other interests that arise' in the context of both civil and criminal trials." *United States v. Brown*, 218 F.3d 415, 424 (5th Cir. 2000) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32 n. 18, 104 S. Ct. 2199, 81 L.Ed.2d 17 (1984))); see also *Marceaux v. Lafayette City-Par. Consol. Gov't*, 731 F.3d 488, 492 (5th Cir. 2013).

"Few, if any, interests under the Constitution are more fundamental than the right to a fair trial by 'impartial' jurors, and an outcome affected by extrajudicial statements would violate that fundamental right." *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 111 S. Ct. 2720, 2745, 115 L.Ed.2d 888 (1991). "Accordingly, trial courts have 'an affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity.'" *United States v. Brown*, 218 F.3d 415, 423 (5th Cir. 2000), citing *Gannett Co. v. DePasquale*, 443 U.S. 368, 99 S. Ct. 2898, 2904, 61 L.Ed.2d 608 (1979). To this end, Ms. Hollingsworth requests entry of a gag order governing all participants and parties to this litigation.

**A.  The Court Has Inherent Authority, If Not A Duty, To Issue A Gag Order.**

"Intense publicity…poses significant and well-known dangers to a fair trial." *United States v. Brown,* 218 F.3d 415, 423 (5th Cir. 2000), citing *Pennekamp v. Florida,* 328 U.S. 331, 66 S.Ct. 1029, 1043, 1047, 90 L.Ed. 1295 (1946) (Frankfurter, J., concurring). "Paramount among these dangers is the potential that pretrial publicity may taint the jury venire, resulting in a jury that is biased toward one party or another." *Id* at 423. "Other principal dangers include disseminating to the press inadmissible evidence, the exclusion of which at trial 'is rendered meaningless when news media make it available to the public,' as well as creating a 'carnival atmosphere,' which threatens the integrity of the proceeding. *Id* at FN 8, citing *Sheppard v. Maxwell*, 384 U.S. 333, 86 S. Ct. 1507, 1520–21, 16 L.Ed.2d 600 (1966).  "A proper weighing of dangers might consider the harm that occurs when speech about ongoing proceedings forces the court to take burdensome steps such as sequestration, continuance, or change of venue." *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1057, 111 S. Ct. 2720, 2735, 115 L. Ed. 2d 888 (1991)

To balance the constitutional right to a fair trial with the free speech rights, the U.S. Fifth Circuit has adopted the "substantial likelihood" test found in ABA Model Rule 3.6 – which is also incorporated into the Louisiana Rules of Professional Conduct. "If the district court determines that there is a 'substantial likelihood'… that extrajudicial commentary by trial participants will undermine a fair trial, then it may impose a gag order on the participants, as long as the order is also narrowly tailored and the least restrictive means available. This standard applies to both lawyers and parties, at least where the court's overriding interest is in preserving a fair trial and the potential prejudice caused by extrajudicial commentary does not significantly depend on the status of the speaker as a lawyer or party." *United States v. Brown*, 218 F.3d 415, 428 (5th Cir. 2000).

Referring to the gag order in *United States v. Brown*, *supra* a decision of the Eastern District of Louisiana commented, "Exacerbating the 'carnival atmosphere' of this high-profile case was 'the parties' self-proclaimed willingness to seize any opportunity to use the press to their full advantage.'" *U.S. ex rel Stewart v. Louisiana Clinic*, No. CIV.A.99-1767, 2002 WL 32850, at *2 (E.D. La. Jan. 10, 2002).

Plaintiff's counsel in the instant matter have also seized any opportunity to use the press to their full advantage, and if allowed to continue, we will no doubt be faced with a "carnival atmosphere" around this case. In fact, Plaintiff's counsel have essentially created their own press opportunities by making themselves available for one-on-one interviews, participating in anti-LEO protests, and using social media to disparage the Louisiana State Police and the defendants.

For example, Plaintiff's counsel recently promoted and participated in a well-publicized and video-taped anti-LEO protest on the steps of the Louisiana State Capitol. To promote the protest, Plaintiff's counsel, Lee Merritt, Esq., posted a call-to-arms on Twitter® for the "Justice 4 Ronald Greene" protest. In the "tweet" Mr. Merritt stated, "the murder of #Ronald Greene requires immediate and specific action" and he demanded the arrest of parties to this proceeding:



At the protest on May 27, 2021, Plaintiff's counsel gave fiery speeches on the steps of the Louisiana State Capitol, after which anti-LEO activists chanted "No Justice, No Peace" while they marched to the Governor's mansion.

The "tweets" on Mr. Merritt's Twitter® page in the days leading up to the Capitol protest are replete with "murder" accusations, comparing the case to the infamous George Floyd/Derek Chauvin trial which involved outright rioting in Minneapolis in 2020:





Before the "Justice 4 Ronald Greene" march left the Capitol steps, Plaintiff's counsel took turns revving up the crowd. Plaintiff's counsel, Merritt, spoke first, stating:

- "A human being was killed in the state of Louisiana. He was murdered on the side of the road." (Quoted text begins at 1:07:05).

- "How many of you saw the video? It was an actual happening, we're not here theoretically, we are not here about what could have been or should be, we are saying a man was murdered in the state of Louisiana, which is a state in the country of the United States and when someone is murdered, there is something that ought to happen." (Quoted text begins at 1:07:13).

- "The reason we don't have an arrest is because the elected officials that you all selected, that we selected through our vote, has said yeah that's the rules but, or else what." (Quoted text begins at 1:08:40).

- "They are questioning you, about what your resolve… they want to know what you're gonna do about it. You know it was a crime. You know there was no justification for the use of force. You know that a family is injured, and we are diminished by his death. And they want to know what you're gonna do about it." (Quoted text begins at 1:08:55).

- "I'm actually not here for a fancy speech. I'm here to march and to stand with the community. I'm over speeches. (Quoted text begins at 1:08:25).

- "A real person, her son, [pointing to Mr. Greene's mother] was murdered by state agents." (Quoted text begins at 1:08:30).

- I know how to litigate. We're doing that. But listen. If they kill my brother, if they kill my five beautiful children, there are consequences." (Quoted text begins at 1:09:51).

- "I am telling the community right now that the NAACP, ACLU, and the new Black Panther Party that supports me everywhere I go, that we now have a responsibility. **I don't give a damn about their system.** Civil rights have been disbanded in Louisiana, because we know under the rules of civil rights if someone is killed there is an arrest, well it's been two years and they do not plan to make an arrest. Or else what?" (Quoted text begins at 1:10:01).

- I cannot tell the State of Louisiana or the community of Baton Rouge what to do. But whatever you all say to do, we got your back. (Quoted text begins at 1:10:45).[2]

---

[2] https://wgno.com/news/louisiana/watch-live-justice-rally-for-ronald-greene-at-louisiana-state-capitol/

As Mr. Merritt incited the crowd, members of the New Black Panther Party – whom Mr. Merritt assured the crowd "supports me everywhere I go" and "had their back" – ominously stood guard, clad in all black, wearing masks to conceal their identity, and armed with AR-15 rifles:



Before the march on the Governor's mansion, Plaintiff's local counsel, Haley, followed Mr. Merritt with his own impassioned speech, stating:

- I've been practicing law for 13 years. I'm about to put my 1L hat on and talk about the code of criminal evidence. Just a little bit. I'm gonna school you a little bit. You see, there's a statute in the State of Louisiana that covers murder. The gist of what that statute says is, if you specifically inflict great bodily harm or have the specific intent to kill and someone dies that is murder. (Begin at 1:13:25)

- "Now much was made about the bulls**t autopsy, I'm sorry I had to curse, that was done on Ronnie Greene…wanna talk about some cocaine delirium, and some alcohol, and what he ate for breakfast the day before, and who he talked to on the phone, and somehow that played into his state of emotions were. Nah, I ain't here for all that." (Begin at 1:14:27)

- "The world saw on those nine videos, that were released, how Ronnie Greene died. Did it look like cocaine? Did it look alcohol? Did it look like a damn car accident? What did it look like? [Crowd chants "Murder!"]. And what do we do with murderers. [Crowd chants "lock them up!"] (Begin at 1:15:00).[3]

Probably not coincidentally, the day before the "Justice 4 Ronald Greene" march on the Governor's mansion, Plaintiff's counsel authored and transmitted a letter directly to the Governor (circumventing the normal chain of authority in litigation defended by the Louisiana Attorney General) which directly pressured the Governor "to negotiate a settlement in good faith," stating:

> To be clear, we are requesting an in-person meeting to discuss settlement and resolution of this matter.[4]

Given the timing, it is likely the Capitol protest, the march on the Governor's mansion, and the demand for settlement discussions were coordinated for maximum impact.

Should such actions continue, we can likely expect coordinated rallies and protests around the trial of this case – potentially like the George Floyd/Derek Chauvin trial. Indeed, Plaintiff's counsel promote their involvement in both the George Floyd and Ronald Greene investigations on their law firm website.[5] While citizens are certainly free to peacefully rally, Plaintiff's counsel – bound by Rule 3.6 of the Rules of Professional Conduct – should not be allowed to create a "carnival atmosphere" around this case with incendiary rhetoric.

### B.  The Rules of This Court Prohibit Unfair Trial Publicity.

Plaintiff's counsel chose to participate in the investigation of Mr. Greene's death and in this litigation – a choice which brings with it duties to the tribunal. As participants in this litigation, Plaintiff's counsel can, and should, be restrained from speaking publicly about this case, particularly when their speech is calculated to materially prejudice other parties to the litigation.

---

[3] https://wgno.com/news/louisiana/watch-live-justice-rally-for-ronald-greene-at-louisiana-state-capitol/
[4] *See* Exhibit 1, filed contemporaneously herewith.
[5] https://www.stopexcessiveforce.com/

Public statements which are clearly intended to apply political pressure and leverage a monetary settlement threaten the integrity of this proceeding.

A district court has ample authority to govern the conduct of attorneys permitted to practice before it. "The Rules Enabling Act provides the Western District of Louisiana with the power to 'prescribe rules for the conduct of [its] business.'" 28 U.S.C. § 2071(a); *see also* Fed. R. Civ. P. 83(a)(1) ("After giving public notice and an opportunity for comment, a district court, acting by a majority of its district judges, may adopt and amend rules governing its practice."). *In re Goode*, 821 F.3d 553, 557 (5th Cir. 2016). Moreover, "every attorney permitted to practice in this court shall be familiar with these rules." LR83.2.8W, Uniform Rules for District Courts.

To govern attorney conduct, the U.S. Western District Court of Louisiana "adopts the Rules of Professional Conduct of the Louisiana State Bar Association, as hereafter may be amended from time to time by the Louisiana Supreme Court."   LR83.2.4W, Uniform Rules for District Courts. Rule 3.6 of the Louisiana Rules of Professional Conduct governing "Trial Publicity" provides:

(a) A lawyer who is *participating or has participated* in the investigation or litigation of a matter *shall not make an extrajudicial statement* that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a *substantial likelihood of materially prejudicing an adjudicative proceeding* in the matter.

(b) Notwithstanding paragraph (a), a lawyer may state:

(1) the claim, offense or defense involved and, except when prohibited by law, the identity of the persons involved;
(2) information contained in a public record;
(3) that an investigation of a matter is in progress;
(4) the scheduling or result of any step in litigation;
(5) a request for assistance in obtaining evidence and information necessary thereto;
(6) a warning of danger concerning the behavior of a person involved, when there is reason to believe that there exists the likelihood of substantial harm to an individual or to the public interest; and
(7) in a criminal case, in addition to subparagraphs (1) through (6):
(i) the identity, residence, occupation and family status of the accused;

10

(ii) if the accused has not been apprehended, information necessary to aid in apprehension of that person;

(iii) the fact, time and place of arrest; and

(iv) the identity of investigating and arresting officers or agencies and the length of the investigation.

(c) Notwithstanding paragraph (a), a lawyer may make a statement that a reasonable lawyer would believe is required to protect a client from the substantial undue prejudicial effect of recent publicity not initiated by the lawyer or the lawyer's client. A statement made pursuant to this paragraph shall be limited to such information as is necessary to mitigate the recent adverse publicity.

(d) No **lawyer associated in a firm** or government agency with a lawyer subject to paragraph (a) shall make a statement prohibited by paragraph (a).

(Emphasis added).

As counsel of record, Mr. Haley and Mr. Mark Maguire, Esq.,[6] are certainly bound by Rule 3.6(a). Even though Mr. Merritt is not included on Plaintiff's pleadings as counsel of record in this action, as a partner "associated in" Mr. Maguire's Pennsylvania law firm, McEldrew Young, Purtell & Merritt, Mr. Merritt is also bound by Rule 3.6(a). *See* Rule 3.6(d).

It should not be a surprise to Plaintiff's Philadelphia lawyers that their extrajudicial comments are restricted under Rule 3.6. The Pennsylvania Rules of Professional Conduct contain an identical Rule 3.6. Furthermore, the U.S. Eastern District Court of Pennsylvania, located in Philadelphia where Plaintiff's counsel has offices, adopts the Pennsylvania Rules of Professional Conduct, including Rule 3.6.

Like Pennsylvania, Louisiana's Rule 3.6 is derived from the ABA Model Rules of Professional Conduct, and each contain identical provisions. The official comments to ABA Model Rule 3.6 are particularly instructive and have been cited as persuasive by the U.S. Eastern District

---

[6] As a pro hac admittee, Mr. Maquire is obligated to be familiar with the local rules. *See* LR83.2.8 of the U.S. Western District Court of Louisiana.

Court of Louisiana. In addition, the Pennsylvania Rule 3.6 contain official comments identical to the ABA Model Rule 3.6.[7]

According to Comment 5 to ABA Model Rule 3.6, "[t]here are… certain subjects that are more likely than not to have a material prejudicial effect on a proceeding, particularly when they refer to a civil matter triable to a jury," including:

> the character, credibility, reputation or criminal record of a party, suspect in a criminal investigation or witness, or the identity of a witness, or the expected testimony of a party or witness;

*See also U.S. ex rel Stewart v. Louisiana Clinic*, No. CIV.A.99-1767, 2002 WL 32850, at *2 (E.D. La. Jan. 10, 2002) ("A statement is considered 'likely to have such an effect' when it refers to 'a civil matter triable to a jury' and the statement includes the 'character, credibility, [or] reputation ... of a party.'").

As shown below, Plaintiff's counsel have made repeated statements on subjects identified by Comment 5 to ABA Model Rule 3.6 as being likely to have a material prejudicial effect on this proceeding. As the examples cited below clearly show, Plaintiff's counsel have commented repeatedly on social media, in state, local and national news interviews, and at protests staged to promote their anti-LEO cause with extrajudicial accusations of "murder" and "cover-up." Such comments are materially prejudicial because they attack the character, credibility, and reputation of parties to this case – the Louisiana State Police troopers who were involved in the pursuit and apprehension of Mr. Greene, as well as the command staff who reviewed the use of force and determined the cause of Mr. Greene's death was crash-related blunt force chest trauma.

---

[7] Likewise, LR83.2(b) of the U.S. Middle District Court of Pennsylvania adopts ABA Rule 3.6 Comment 5 verbatim.

**C.  Extrajudicial Statements by Plaintiff's Counsel Violate Rule 3.6**

Examples of public statements by Plaintiff's counsel are too numerous to include in this

memorandum. Suffice it to say, Plaintiff's counsel seize every media opportunity.

For example, Plaintiff's counsel, Merritt, Haley, and Maguire participated in a 30-minute

television news interview on WAFB News in Baton Rouge stating:[8]

- The question that we have, as representatives of Ronald Greene's family is, is murder illegal in the state of Louisiana? (Quoted text begins at 0:11).

- "Kory York, Dakota Demoss, and James Clary are criminals. (Quoted text begins at 1:52).

- "What we saw…was the murder of a man. (Quoted text begins at 5:22).

- Let's be clear. This is murder. (Quoted text begins at 5:41).

Nationally, on ABC news, Mr. Merritt went further and interjected race-based comments:

"No one has delivered any specific action," Merritt said. "We believe in equal protection under the law. And we know if a white citizen, a fellow police officer, the governor's child, had met the same end that Ronald Greene met, there would be action by now."[9]

Nationally, on CNN, Plaintiff's counsel, Haley, is quoted as stating:

"Everyone that put their hands on Ronald Greene should be arrested and two minutes after they are arrested, anyone that participated in the cover-up should follow them right into the jail cell," Haley told CNN.

Haley said Saturday that the troopers "took it upon themselves to be judge, jury and executioner."[10]

What makes sense to us would be a charge of homicide on the officers that put their hands on Ronald Greene and we want those also that participated in the cover-up that night and subsequently afterward to face punishment as well," Haley told CNN on Thursday.[11]

---

[8] https://www.facebook.com/Channel9BatonRouge/videos/529132025117512/?__tn__=K-R
[9] https://abcnews.go.com/US/wireStory/capitol-rally-planned-death-man-police-custody-77941530
[10] https://www.cnn.com/2021/05/22/us/ronald-greene-louisiana-video-saturday/index.html
[11] https://www.cnn.com/2021/05/28/us/ronald-greene-family-rally/index.html

Nationally on ABC News and, internationally on Al Jazeera, Mr. Haley is quoted as saying:

> "Make no mistake: Ron Greene was murdered at the hands of Louisiana State Police."[12] [13]

Locally, in a television news interview on KNOE, which aired in the U.S. Western District,

Mr. Merritt referred to the complaint filed in this litigation, characterized Mr. Greene's death as

"murder," and demanded arrests. In the KNOE interview, Mr. Merritt stated:

> "Although we are now thoroughly convinced of what we eventually put into that complaint that there was extreme misconduct involved in Ronald Greene's murder and that people need to go to jail and the system needs to change."[14]

In a Facebook® post linking the KNOE interview, Mr. Merritt cited this case to support

his national anti-LEO political agenda, again characterizing Mr. Greene's death as "murder":

> Ronald Greene was murdered by Louisiana State Troopers over a year ago. They lied about the chase. They lied about the arrest. They lied about his cause of death. Local prosecutors knew they were lying and for one year did nothing. This is why we need federal oversight for all in custody deaths and officer involved shootings.[15]

In another local TV news interview on KTVE which also aired in the U.S. Western District

of Louisiana, Mr. Merritt gave a one-sided and highly prejudicial comment on the Louisiana State

Police body-worn camera video which will be introduced into evidence at trial, claiming a

"conspiracy and cover-up" of "systemic violence," and stating:

> What this video done and all this being in the view of the public, it really shows us, especially as the degree of conspiracy and cover-up comes to light, is how truly systemic police violence is. That Ronald Greene was beat to death on the side of the road on May 10th 2019, not because he was some bad guy or because officers

---

[12] https://abcnews.go.com/US/wireStory/capitol-rally-planned-death-man-police-custody-77941530

[13] https://www.aljazeera.com/news/2021/5/27/rights-activists-charge-police-who-murdered-ronald-greene

[14] Quoted text begins at 1:32: https://www.knoe.com/2020/09/18/west-monroe-family-still-demanding-justice-after-in-custody-death/

[15] https://www.facebook.com/Lee-Merritt-Esq-229680694170570/videos/ronald-greene-was-murdered-by-lousiana-state-troopers-over-a-year-ago-they-lied-/331715928153015/

14

have a tough job, but because it's their policy that if someone runs from the police it shows them what they perceive to be that form of disrespect. They're allowed by the supervisors, they're allowed by the system to use this form of gratuitous violence to punish them, and it's that kind of violence, systemic violence that is sanctioned by the state that we really need to have specific policies to deal with.[16]

Contrary to Mr. Merritt's claims in the media, the autopsy findings simply will not support a factual finding that Mr. Greene "was beat to death on the side of the road." Even assuming for the sake of argument that there was any truth to their statements, all parties to the litigation are entitled to a decision by a fact finder that is influenced by the evidence and the law presented by the trial court, not by comments in the media which have not been tested under the rules of evidence that assist our courts in finding the substantiated truth. To maintain the integrity of this proceeding, the continual media hype by Plaintiff's counsel should be prohibited.

Plaintiff's media campaign is clearly designed to disparage the character, credibility, and reputations of the State of Louisiana, the Governor, the Louisiana State Police, and Master Trooper Chris Hollingsworth to gain traction for their anti-LEO political agenda, to incite community outrage and potentially dangerous protests, and to pressure the State for a monetary settlement. This troubling conclusion is evident in the following comments by Plaintiff's counsel.

Prior to sending the demand letter to the Governor, Plaintiff's counsel taunted the Governor and compared the high-speed pursuit of Mr. Greene to "slave catching" culture in an interview posted on a global internet news site, "Democracy Now!" In the May 24, 2021, interview, Mr. Merritt assailed Troop F as "notorious for brutality," stating:

- Yeah, John Bel Edwards, who's paid lip service to the Black Lives Matter movement, for the students at places like Louisiana State University. His father is a sheriff. His grandfather was a sheriff. He signed in the Blue Lives Matter legislation that made it a hate crime to target police officers in Louisiana. And his actions have shown that he's willing to go to bat for law enforcement but has failed to take concrete steps to really

---

[16] Quoted statements begin at 3:05:  https://www.myarklamiss.com/news/local-news/watch-ktves-bode-brooks-sits-down-with-ronald-greenes-family-attorney/

remedy very real issues of violence, mass incarceration and systemic racism within the Louisiana State Police Department.

- So, again, he's moved towards the Black community with lip service, especially over the last year, but in terms of tangible, concrete results, we've seen very little. And we're looking for specific actions in this case, including him instructing the attorney general to vigorously prosecute these men for the local state charges, and participating fully with a federal review of his state police — not only this troop, but the culture within the Louisiana State Troopers Office generally.

- And I don't think I've seen a more graphic example of the continuation of the slave culture than this scene. It invokes the images of slave catchers hunting down a runaway slave. And it's really from that spring that this culture drew from. You had to punish runaway slaves in places like Louisiana, if they ran, to send an example to other enslaved persons that they're not allowed to run, or they would receive this kind of violence. That culture, that training is still alive and well today, in a way that I think a lot of Americans will find very off-putting, but it hasn't gone anywhere in the hundreds of years that this culture has set in.

- And this troop is notorious for brutality in the region. The officers who were involved in this violence went on, after the death of Ronald Greene, to participate in the brutalization, and even death, of other members of the Louisiana community. You mentioned in your opening that one of the officers, Dakota DeMoss, is facing criminal charges, but not as it relates to the murder of Ronald Greene or even the aggravated assault of Ronald Greene, but for a completely separate incident. That is also true of Chris Hollingsworth. Before he passed away, it was discovered that he had other incidents of violence attached to him that the leadership structure in Louisiana helped to cover up for.[17]

Mr. Merritt has repeated his highly prejudicial "slave-catcher" analogy on NBC news televised nationally, stating: "It invokes the image of what you might imagine how slave catchers looked when hunting down a runaway slave."[18]

In addition to the repeated "murder" accusations, Plaintiff's counsel have continually picked at the wounds of racism with racially charged "tweets." For example, on May 23, 2021, Mr. Merritt referred to the Louisiana State Police as "slave catchers:"

---

[17] https://www.democracynow.org/2021/5/24/ronald_greene_louisiana_police_arrest_death
[18] Quoted text begins at 1:11 on the NBC news video at: https://www.nbcnews.com/news/us-news/louisiana-police-unit-probed-over-black-driver-arrests-after-death-n1270283



Mr. Merritt continues to disparage the Louisiana State Police as racists, positing that our State law enforcement agency's policy is, "If a black man runs you get to beat him."



Apparently dissatisfied with the effect of the march on the Governor's mansion and feeling the invitation to discuss settlement had been rebuffed (for valid reasons), the day after the Capitol protest, Mr. Merritt tweeted:

17



While Plaintiff's counsel certainly have a right to their strongly held anti-LEO political beliefs, and certainly have a right to advocate the anti-LEO cause of their constituents and clients outside the courtroom, to preserve the integrity of this proceeding, they must be prohibited from making disparaging and provocative public statements about the character, reputations, and credibility of other parties to this litigation. If allowed to continue, such extrajudicial statements by Plaintiff's counsel and others participating in this litigation will undermine Ms. Hollingsworth's right to a fair trial and create a "carnival atmosphere."

In fact, Mr. Merritt evidently desires, and advocates for, a "carnival atmosphere," stating:

> "***We're asking for families to be disruptive***, disruptive in whatever way that fits their lifestyle. We cannot continue with business as usual, someone was murdered, someone died, he was a meaningful member of this family."[19]

Racially provocative comments and comments advocating civil disobedience exceed the bounds of professionalism under Rule 3.6 of the Louisiana Rules of Professional Conduct.

---

[19]   https://www.facebook.com/Channel9BatonRouge/videos/529132025117512/?__tn__=K-R (Quote begins at 22:04)

III.    <u>**CONCLUSION**</u>

The Honorable Court has an affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity. While ordinary citizens are free to voice their opinions on pending investigations and litigation, Plaintiff's counsel of record, affiliated counsel, and other trial participants are held to a higher standard.

Plaintiff's counsel has expressed disdain for Louisiana's judicial system on the steps of the Louisiana State Capitol, proclaiming "I don't give a damn about their system." This sentiment is evidenced by the flagrant disregard of Rule 3.6 as Plaintiff's counsel seize any media opportunity to attack the credibility, character, and reputations of the Louisiana State Police, its command staff and troopers, and parties in this litigation, including Darby's late husband, Chris Hollingworth.

Given the incendiary nature of the media campaign being conducted by Plaintiff's counsel, a gag order is warranted, if not required. The smear campaign must end.

In our system, justice is served in a courtroom, not in a newsroom.

Accordingly, Defendant, Darby Hollingsworth, on behalf of her minor son, G.H., respectfully prays that this Honorable Court grant her proposed Protective Order.

Respectfully submitted,

**JEFF LANDRY**
**ATTORNEY GENERAL**

**BY**: /s/    *P. Scott Wolleson* (#22691)
            Special Assistant Attorney General

**BREITHAUPT DUBOS & WOLLESON** LLC
1811 Tower Drive
Monroe, Louisiana 71201
Telephone: (318) 322-1202
Facsimile: (318) 322-1984
Email: scott@bdw.law

**ATTORNEYS FOR HOLLINGSWORTH**

19

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 12, 2021, a copy of the foregoing Defendant's Memorandum in Support of Motion for Protective Order was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to all counsel by operation of the court's electronic filing system.

*/s/ P. Scott Wolleson*