UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | | |
|---|---|---|
| TAYLA GREENE | * | NO. 3:20-CV-00578 |
| | * | |
| VERSUS | * | JUDGE TERRY A. DOUGHTY |
| | * | |
| DAKOTA DEMOSS, ET AL. | * | MAG. JUDGE KAYLA D. McCLUSKY |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE AND IN OPPOSITION TO MOTION FOR PROTECTIVE ORDER

**NOW INTO COURT**, through undersigned counsel, comes The Associated Press ("AP"), which moves to intervene in the above-referenced matter for the limited purpose of opposing Defendant Darby Hollingsworth's ("Defendant") motion for protective order, through which Defendant seeks to gag "all participants and parties to this litigation" from making any "public comments" regarding the case. Dkt. No. 76-1, at 3.

For the reasons stated below, this Court should (1) grant AP's motion to intervene, and (2) deny Defendant's motion for a protective order. Alternatively, any gag order entered in this case must be narrowly drawn, consistent with First Amendment requirements, so that it cannot be used, including by law enforcement and other government agencies, to deny information to the public about the events underlying this litigation or to deny public records requests made to state and federal agencies.

3627595v.1

## INTRODUCTION

This case involves claims of police brutality brought by the family of Ronald Greene, who died on May 10, 2019, following a high-speed car chase and arrest by Louisiana State Police. The circumstances of Greene's death have been shrouded in secrecy from the beginning.

Following the death, State Police issued a one-page statement saying that troopers struggled with Greene during his arrest and that he died on the way to the hospital. The report did not describe any use of force by troopers. And for more than two years, Louisiana officials rebuffed repeated requests to release police body-camera video of Greene's arrest.

Despite the government's efforts to keep the public in the dark, in May 2021, AP released body-camera footage showing troopers converging on Greene's car, repeatedly jolting the 49-year-old unarmed man with stun guns, putting him in a chokehold, striking him in the head and dragging him by his ankle shackles. Greene can be heard apologizing to the officers, telling them he is scared and moaning and gasping for air. One 30-minute clip, which a supervisor denied having for two years, shows troopers ordering the heavyset Greene to remain facedown with his hands and feet restrained for more than nine minutes—a tactic use-of-force experts criticized as dangerous and likely to have restricted his breathing.

The events leading to Greene's death are the subject of this suit as well as a federal civil rights investigation by the U.S. Department of Justice.[3] The FBI recently took the unusual step of ordering a new look at the autopsy to Greene to consider evidence not provided after his

---

[3] Mustian, *Feds probing in-custody death of Black man in Louisiana*, Associated Press (Sept. 14, 2020), https://apnews.com/article/lawsuits-us-news-ap-top-news-monroe-ar-state-wire-8149ba0410056b2f96b155b0d2e127d7.

death, including the body-camera footage discussed above.[4] The state police unit at issue is also under internal investigation into whether its officers are systematically targeting black motorists for abuse.[5]

Now before the Court is yet another effort to stifle public discussion regarding Greene's death. Defendant moves this Court for a protective order that would gag "all participants and parties to this litigation" from making any "public comments" regarding the case. Dkt. No. 76-1, at 3.[6] Defendant cites the correct legal standard for gag orders articulated in *United States* v. *Brown*, 218 F.3d 415 (5th Cir. 2000), but then seeks to drive a truck through it, requesting a prohibition on speech that is neither "narrowly tailored" nor the "least restrictive means available" to protect the asserted interests.

As to the requirement that the movants show a "substantial likelihood" that extrajudicial commentary will undermine a fair trial, the movant has pointed only to prior statements made by Plaintiff's counsel. Such statements are governed by Rule 3.6 of the Louisiana Rules of Professional Conduct, which prevents attorneys from making extrajudicial statements that will have a substantial likelihood of materially prejudicing an adjudicative proceeding. In other words, the requested gag order is unnecessary because the only individuals alleged to have made prejudicial statements supporting the requested gag order are attorneys who are already subject

---

[4] Mustian, *Body cam prompts new look at what killed Black motorist*, Associated Press (July 7, 2021), https://apnews.com/article/death-of-ronald-greene-e9474dfffbe1d37f7e1ff711a32f2e2d.
[5] Mustian, *Louisiana police unit probed over Black driver arrests*, Associated Press (June 9, 2021), https://apnews.com/article/la-state-wire-louisiana-death-of-ronald-greene-arrests-4a47c5e0ef720019d15818cf32eb2a2a.
[6] After Defendant Hollingsworth filed her motion requesting a gag order, several other Defendants filed their own memoranda largely adopting the arguments of Hollingsworth. *See* Dkt. Nos. 82–84.

to Rule 3.6. Rather, the Defendant's remedy is to seek relief against Plaintiff's counsel for alleged violations of Rule 3.6, not a gag order covering all parties and participants.

Separately, we note that the Defendant submitted a proposed order that purports to narrow the gag order to "extrajudicial statements which will present a substantial likelihood of prejudicing the court's ability to conduct a fair trial," including—*but not limited to*—a set of enumerated topics that, among other things, would bar criticism of the Louisiana State Police. *See* Dkt. No. 77, at 1 ("Proposed Order"). To the extent the Defendant intended for the motion to seek this more limited gag order, AP still opposes the request. Such an order is plainly overbroad, and, if not properly confined, will deprive the public of its constitutional right to criticize and receive information about the actions of its government. In addition, and of particular concern, a broadly drafted gag order might be used by law enforcement or other government agencies to deny to the public information about the incident, including requests under the public records laws.

For these reasons, which are addressed in more detail below, the Court should grant AP's motion to intervene and deny Defendant's motion for a protective order. Alternatively, the Court must ensure that any protective order entered in this matter is consistent with the First Amendment's strict requirements for prior restraints on speech so that it cannot be used to deny the public information about the death of Ronald Greene.

**ARGUMENT**

**I.     The Press May Intervene for the Limited Purpose of Challenging a Gag Order**

By filing its Motion to Intervene and this Memorandum, AP seeks to uphold certain rights guaranteed by the First Amendment and the common law, including the right to receive information about judicial proceedings and government actions. AP is a newsgathering organization that provides regular news coverage to the public. The public depends on the news media for information about important judicial proceedings, conduct by government officials, and other subjects of public concern. *See e.g., Richmond Newspaper, Inc.* v. *Virginia,* 448 U.S. 555, 572-73, 581-82, n.18 (1980) ("Instead of acquiring information about trials by first-hand observation or by word of mouth from those who attended, people now acquire it chiefly through the print and electronic media."); *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 490–91 (1975) ("[I]n a society in which each individual has but limited time and resources with which to observe at first hand the operations of his government, he relies necessarily upon the press to bring to him in convenient form the facts of those operations.").

The Fifth Circuit has held that media organizations have standing to challenge gag orders on trial participants because such orders can impede the news agencies' ability to discover newsworthy information from potential speakers. *Davis v. Capital City Press*, 78 F.3d 920, 927 (5th Cir. 1996). As the Court acknowledged in *United States v. Cleveland,* courts have routinely allowed the press to intervene in judicial proceedings to challenge gag orders. No. CRIM.A. 96-207, 1997 WL 412466, at *2 (E.D. La. July 22, 1997), aff'd, 128 F.3d 267 (5th Cir. 1997) (*citing In re New York Times Co.*, 878 F.2d 67, 68 (2d Cir. 1989) (newspaper has standing to appeal gag order); *United States v. Davis*, 902 F. Supp. 98, 101 (E.D. La. 1995), aff'd, 132 F.3d 1454 (5th

Cir. 1997) (newspaper can intervene in criminal case to challenge gag order); *see also United States v. Davis*, 904 F. Supp. 564 (E.D. La. 1995). Indeed, intervention is the preferred means by which the news media may invoke the public's right of access. *See, e.g., In re Beef Industry Antitrust Litigation*, 589 F.2d 786, 789 (5th Cir. 1979) (calling third-party intervention "the procedurally correct course" to challenge a protective order); *United States v. Chagra*, 701 F.2d 354, 359 (5th Cir. 1983) (gathering cases).[7]

### II.    Gag orders must comply with the First Amendment.

A "prior restraint" on speech is an "order that prohibits the utterance or publication of particular information or commentary." *Davis v. East Baton Rouge Parish School Board,* 78 F.3d 920, 928 (5th Cir. 1996) (*citing United States v. Salameh*, 992 F.2d 445, 446 (2nd Cir. 1993)). As the Supreme Court has repeatedly acknowledged, a prior restraint on expression bears "a 'heavy presumption' against its constitutional validity." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 558 96 S. Ct. 2791 (1976); *Carroll v. Princess Anne*, 393 U.S. 175, 181, 89 S. Ct. 347 (1968).

Court orders aimed at preventing or forbidding the speech of trial participants "are classic examples of prior restraints," and must comply with the First Amendment. *Marceaux* v. *Lafayette City-Parish Consolidated Gov't*, 731 F.3d 488, 493 (5th Cir. 2013) (quoting *Alexander* v. *United States*, 509 U.S. 544, 550 (1993)); *Brown*, 218 F.3d at 424. *See also Levine* v. *U.S. Dist. Ct.*, 764 F.2d 590, 595 (9th Cir. 1985) (holding that a court's order prohibiting trial

---

[7] Furthermore, it is not necessary in every case to demonstrate the existence of a willing speaker in order to establish standing. A willing speaker will often be presumed, else there would be no need for a gag order. *Davis*, 78 F.3d at 927.

participants from speaking to the media constituted a prior restraint).

While litigants' First Amendment freedoms may be limited in order to ensure a fair trial, prior restraints nonetheless "face a well-established presumption against their constitutionality." *Marceaux*, 731 F.3d at 493 (citing *Brown*, 218 F.3d at 424–25). Courts faced with a gag order request must determine "whether the harm the court seeks to prevent justifies the restraint on speech." *Id.*

In the Fifth Circuit, gag orders on trial participants require a court finding that the speech, left unchecked, would create a "substantial likelihood" of prejudice to fair trial rights. *See Marceaux*, 731 F.3d at 493–94; *Brown*, 218 F.3d at 426. Any restrictions on speech must also be narrowly tailored and employ the least restrictive means of preventing the prejudice. *Id.*

Finally, courts imposing a gag order must make findings showing a "nexus" between the speech sought to be gagged and the potential harm. *Marceaux*, 731 F.3d at 494. "[T]he mere presence of extra-judicial comments in some forms of media does not, by itself, establish the potential for prejudice of the jury venire without a more thorough examination of that potential." *Id.* at 494 n.4.

### III. Defendant's motion for a protective order is unconstitutionally vague and overbroad and threatens to chill protected speech.

Defendant's motion for a protective order seeks to gag "all participants and parties to this litigation," from uttering any "public comments" regarding the case. (Dkt. No. 76-1, at 3). That sweepingly broad request is only slightly narrowed by the Proposed Order attached to the motion, which seeks to gag "extrajudicial statements which will present a substantial likelihood of prejudicing the court's ability to conduct a fair trial," including—but, notably, not limited to—a few

- 7 -

enumerated types of speech, including statements that are critical of the Louisiana State Police. As such, the proposed gag order is overly broad and vague as it fails to properly apprise those to whom it is to be directed of what they are (and are not) permitted to say. The motion is legally deficient.

In addition, Defendant has utterly failed to show that speech by "other participants to the trial" would create a "substantial likelihood" of prejudice to any protected interests. The motion speaks about what it characterizes as "the extensive local, national, and international media coverage of the in-custody death of [Ronald] Greene." *Id*. at 1. It also cites statements by Plaintiff's counsel, which, Defendant alleges, were "clearly intended to stir up community outrage, to gain a tactical advantage at trial, and to advance their national political agenda." *Id*. But each of these citations are to past statements made only by the Plaintiff's counsel. In many ways, the examples cited by Defendant show an already-saturated market for views about the incident involving Greene. They also say nothing about the likelihood that individuals *other than* Plaintiff's counsel would make prejudicial statements concerning the case.

Greene's death was a high-profile incident that implicates questions of police brutality—a subject that *should* be discussed by the public in order to ensure accountability and democratic oversight of government institutions. The fact that this matter has been previously discussed publicly by the parties and others, even passionately, does not necessarily lead to the conclusion that future statements about the matter will threaten the court's ability to hold a fair trial. *See, e.g.*, *Marceaux*, 731 F.3d at 494 n.4 ("the mere presence of extra-judicial comments in some forms of media does not, by itself, establish the potential for prejudice of the jury venire without a more thorough examination of that potential"). Rather, the Court must find a "nexus"

between the statements intended to be barred and the substantial likelihood of material prejudice that would arise from the extrajudicial comments. *Id.* Defendant's motion does not make that case.

Nor is Defendant's proposed gag order narrowly tailored. "It is axiomatic that the limitation on First Amendment freedoms must be no greater than is essential to the protection of the particular governmental interests involved." *Brown*, 218 F.3d at 429 (internal quotations omitted). A gag order must be narrowly drawn to eliminate "only that speech having a meaningful likelihood of materially impairing the court's ability to conduct a fair trial." *Id.*

As noted above, almost the entirety of Defendant's motion is spent discussing allegedly prejudicial comments made by Plaintiff's counsel. Such statements are governed by Rule 3.6 of the Louisiana Rules of Professional Conduct, which prevents attorneys from making extrajudicial statements that will have a substantial likelihood of materially prejudicing an adjudicative proceeding. In other words, the requested gag order is unnecessary because the only individuals alleged to have made prejudicial statements supporting a requested gag order are attorneys who are already subject to Rule 3.6. Rather, the movants' remedy is to seek relief against plaintiff's counsel for alleged violations of Rule 3.6, not a gag order covering all parties and participants.

Defendant's focus on Plaintiff's counsel evinces no need for the Court to include "other participants" to the litigation within a gag order, particularly to the extent that such an order would apply to unidentified potential witnesses. In a case like this one involving allegations of police misconduct, the risk is particularly acute that a broadly worded gag order might be misinterpreted to include a broad swath of law enforcement and other government agencies and

effectively cut off channels of communication to the public regarding the incident.

Also deficient is Defendant's vague request that the gag order bar "statements which will present a substantial likelihood of prejudicing the court's ability to conduct a fair trial." "A restraining order of any type is unconstitutionally vague if it fails to give clear guidance regarding the type of speech that an individual may not utter." *Brown*, 218 F.3d at 430. Gag orders must clearly define the prohibited speech and make clear, for example, that they apply *only* to comments directly related to the merits of the civil litigation. That is not the case with Defendant's motion, which seeks a gag order that gives little guidance to speakers and would create a substantial risk of chilling speech on important matters of government accountability. Even the enumerated examples outlined in the Proposed Order are too vague to provide the "clear guidance" required under the First Amendment. *Id.*

Further, prohibitions on speech must leave open "various avenues of expression." *Id.* at 429. In *Brown*, the Fifth Circuit upheld a ban on parties making a statement of innocence or a comment on the merits of the case but emphasized that the gag order still allowed discussions about the general nature of the allegations or defenses, information contained in the public record, scheduling information, any decision or order by the court that is a matter of public record and the contents of any motion filed. *See id.* at 423.

Defendant's Proposed Order would go far beyond the type of statements about the merits of the case that were upheld in *Brown*. Rather, Defendant takes aim at a broad swath of speech that would criticize the government and thus is at the heart of the First Amendment. *See Bridges v. California*, 314 U.S. 252, 270 (1941) ("For it is a prized American privilege to speak one's mind, although not always with perfect good taste, on all public institutions.") The Proposed

Order, for example, would prohibit any statements that criticize the Louisiana State Police, statements that even "imply" a problem of systemic racism within the State Police, or statements that refer to a "cover-up" or "conspiracy" involving Greene's death. Such substantive proscriptions on critical matters involving government actions are plainly untenable and violative of the First Amendment.

The risk of an overbroad or ambiguous gag order, of course, is that it can have a chilling effect on protected speech. Those risks are particularly acute in a case like this one, where the claims involve allegations of police brutality and the litigation will inherently involve criticisms of government action. Any gag order entered in the case must clearly identify the individuals subject to the order, clearly define the type of speech that is prohibited, and be narrowly tailored to bar no more speech than necessary to protect the parties' fair trial rights. Importantly, the order cannot be interpreted by third parties, mainly those associated with government entities, to have the effect of inhibiting the free flow of information about the incident involving Greene, public discussion of which is so important to democratic governance.

Finally, the Court must also consider alternatives to a gag order, including change of venue, jury sequestration, "searching" voir dire and "emphatic" jury instructions, as tools to deal with pretrial publicity. *See Brown*, 218 F.3d at 430–31 (discussing the constitutional requirement to consider alternatives to a gag order established by *Nebraska Press Ass'n* v. *Stuart*, 427 U.S. 539 (1976) and *Sheppard* v. *Maxwell*, 384 U.S. 333 (1966)). Defendant's motion does not even address this requirement, let alone explain why these alternatives would be insufficient to address the issue of pretrial publicity here.

## CONCLUSION

For all of the foregoing reasons, this Court should enter an order granting the motion to intervene and denying Defendant's motion for a gag order.  Alternatively, any gag order entered in this case must be narrowly drawn, consistent with First Amendment requirements, so that it cannot be used, including by law enforcement and other government agencies, to deny information to the public about the events underlying this litigation or to deny public records requests made to state and federal agencies.

Respectfully submitted,

*/s/Loretta G. Mince*
Loretta G. Mince, # 25796
FISHMAN HAYGOOD, L.L.P.
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana  70170-4600
Telephone:  (504) 586-5252
lmince@fishmanhaygood.com

*Attorneys for The Associated Press*

## CERTIFICATE OF SERVICE

I hereby certify that on August 4, 2021, I filed the foregoing with the Clerk of Court using the electronic case filing system, which served notice on all counsel of record.

*/s/Loretta G. Mince*
Loretta G. Mince, # 25796