UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **TAYLA GREENE** | **CIVIL ACTION NO. 3:20-CV-00578** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **DAKOTA DEMOSS, ET AL** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

MEMORANDUM RULING

The issue before this Court is whether a Protective Order, in the form of a gag order, should be implemented prohibiting Plaintiff Tayla Greene ("Tayla") and her attorneys and associates of her attorneys' law firm from making extrajudicial statements.

Pending here is a Motion for Protective Order [Doc. No. 76] filed by Defendant Darby Hollingsworth ("Hollingsworth"), in her capacity as Tutrix for her minor son, G.H. Memoranda in Support of Hollingsworth's Motion for Protective Order have been filed by Defendants Kory York ("York") [Doc. No. 82], Dakota Demoss ("Demoss") [Doc. No. 83], John Clary ("Clary"), Floyd McElroy ("McElroy"), and John Peters ("Peters") [Doc. No. 84].

On August 4, 2021, the Associated Press ("AP") filed a Motion to Intervene [Doc. No. 85] in this proceeding for the limited purpose of opposing the Defendants' Motion for Protective Order. An Order allowing the intervention was signed on August 10, 2021 [Doc. No. 89].

An Opposition [Doc. No. 87] was filed by Tayla, Individually and as Administrator of the Ronald Greene Estate on August 5, 2021. A Reply [Doc. No. 91] was filed by Hollingsworth on August 12, 2021.

For the reasons set forth herein, Hollingsworth's Motion for Protective Order is GRANTED.

I.   **BACKGROUND**

On May 6, 2020, Tayla filed a Complaint [Doc. No. 1] as a result of the death of her father, Ronald Greene ("Ronald"), which occurred on or about May 10, 2019. Tayla alleges that Defendant DeMoss, who was a Trooper for the Louisiana State Police, attempted to stop Ronald as a result of a traffic violation. Ronald did not stop, which resulted in a high-speed chase that went from Monroe, Louisiana into Union Parish, Louisiana. Ronald crashed his vehicle, and other Defendants, Peters, Clary, McElroy, Chris Hollingsworth[1] ("C. Hollingsworth"), York, and Christopher Harpin ("Harpin") arrived on the scene.

DeMoss, Peters, Clary, McElroy, C. Hollingsworth, and York are alleged to be law enforcement officers with the Louisiana State Police. Harpin is alleged to be a deputy law enforcement officer with the Union Parish Sheriff's Office. Tayla alleges that after the crash, Ronald surrendered, but that Defendants used lethal force against him, resulting in his death.

Defendants maintain that Ronald's death was caused by crash-related blunt force chest trauma that resulted in a fractured sternum and ruptured aorta. Defendants further maintain they were required to use force to restrain Ronald for their own personal safety and for the safety of the public.

Therefore, the central issue in this case is the cause of Ronald's death. The in-custody death of Ronald has generated extensive media coverage. Hollingsworth alleges that Tayla's attorneys have seized every opportunity to use the extensive media coverage to disparage the character, reputation, and credibility of the Defendants. Hollingsworth seeks a gag order in this case prohibiting Tayla and her attorneys, and associates, from making disparaging and provocative public statements about the character, reputations, and credibility of the other parties

---

[1] Chris Hollingsworth, the husband of Darby Hollingsworth, died in an automobile accident on September 22, 2020.

2

in this litigation. Hollingsworth alleges that such extrajudicial statements by Tayla's attorneys and associates will undermine the Defendants' right to a fair trial.

The AP filed an Opposition, [Doc. No. 90], stating the gag order is unnecessary for the attorneys, who are bound by Rule 3.6 of the Louisiana Rules of Professional Conduct. Alternatively, the AP maintains the request is overbroad, and requests that if a gag order is issued, it be narrowly drawn. Tayla filed an Opposition [Doc. No. 87] to the Motion for Protective Order, arguing that the public has benefited from this publicity due to the investigation of this incident having been reopened, and that a gag order violates their First Amendment right of free speech. Additionally, Tayla's attorneys maintain they are not violating Rule 3.6 of the Louisiana Rules of Professional Conduct because Rule 3.6(b)(6) allows an attorney to state "a warning of danger concerning the behavior of a person involved where there is reason to believe that there exists the likelihood of substantial harm to an individual or to the public interest."

## II. LAW AND ANALYSIS

The theory of our judicial system is that the conclusions to be reached in a case will be induced only by evidence and argument in open Court, and not by any outside influence, whether of private talk or public print. *Patterson v. Colorado,* 205 U.S. 454, 462 (1907). Few, if any, interests under the Constitution are more fundamental than the right to a fair trial by "impartial" jurors, and an outcome affected by extrajudicial statements would violate that fundamental right. *Gentile v. State Bar of Nevada,* 501 U.S. 1030, 1075 (1991).

Legal trials are not like elections, to be won through the use of the meeting-hall, the radio, and the newspaper. *Bridges v. California*, 314 U.S. 252, 271 (1941).

Cases are too often tried in newspapers before they are tried in court, and the cast of characters in the newspaper trial too often differs greatly from the real persons who appear at the

3

trial in court, and who may have to suffer its distorted consequences. *Pennekamp v. Florida*, 328 U.S. 331, 363 (1946) (*Frankfurter, J. Concurring).*

This is just a sample of U.S. Supreme Court cases discussing the right to an impartial jury and the danger of extrajudicial statements influencing the jury. These cases were decided long before the internet, Twitter, Facebook, You-Tube, twenty-four-hour cable news stations and the many ways that now exist to influence the jury venire with extrajudicial statements.

It is now more important than ever to safeguard the right to a fair trial. In *U.S. v. Brown*, 218 F.3d 415 (5th Cir. 2000), the Fifth Circuit set the standard for regulating attorneys and parties with a gag order. The Court held that a gag order of the attorneys and the parties does not violate the parties and attorneys First Amendment right of free speech if the extrajudicial commentary by those individuals would present a "substantial likelihood" of prejudicing the Court's ability to conduct a fair trial. In adopting the "substantial likelihood" test, the Fifth Circuit used the test found in ABA Model Rule 3.6, which is also incorporated in the Louisiana Rules of Professional Conduct.

### A. Substantial Likelihood of Prejudice

Defendants ask this Court to impose a gag order on Tayla and her attorneys prohibiting extrajudicial comments about the Defendants which disparages the character, reputation, and credibility of the Defendants in this proceeding and/or which will have a substantial likelihood of materially prejudicing the Defendants' right to a fair trial. This case will be tried by a jury in the Western District of Louisiana, Monroe Division. The jury venire will be drawn from the parishes of Ouachita, Lincoln, Caldwell, East Carroll, Franklin, Jackson, Madison, Morehouse, Richland, Tensas, Union, and West Carroll.

Hollingsworth argues that Tayla's attorneys have seized any and every opportunity to use the press to their full advantage, and if allowed to continue, this will result in a "carnival

4

atmosphere" around this case. Hollingsworth argues that attorneys Ronald Haley ("Haley"), Mark V. Maguire, ("Maguire") and S. Lee Merritt ("Merritt") are bound by Rule 3.6. Numerous examples were given:

(1) A May 26, 2021 tweet on Twitter by S. Lee Merritt,[2] Esq. (who has over 78,000 followers and is running for Attorney General of the State of Texas) promoting an anti-law enforcement officer protest to be held on the steps of the Louisiana State Capital on May 27, 2021. In the tweet, Merritt tweeted: "What we know about the murder of Ronald Greene requires immediate and specific action. Louisiana State Police officers York, DeMoss and Clary must be arrested and held accountable."

(2) On May 19, 2021, Merritt retweeted a post by Dan Pereira which stated: "Ronald Greene was murdered in 2019 by white police officers in Louisiana!! The police LIED, which they do all the time, about how he died! The video footage is very disturbing! I saw enough to convict all the Officers like Derek Chauvin!! #RonaldGreene #Maddow."

(3) A May 20, 2021 tweet from Merritt states: "#Ronald Greene's murder by Louisiana State Troopers exposes the institutional corruption that prevents police accountability. A pattern of police violence, open lies, official ratification and injustice."

(4) At a Justice 4 Ronald Greene rally on May 27, 2021 both Merritt and Haley spoke. Merritt stated:[3]

> "A human being was killed in the state of Louisiana. He was murdered on the side of the road." (Quoted text begins at 1:07:05).

> "How many of you saw the video? It was an actual happening, we're not here theoretically, we are not here about what could have been or should be, we are saying a man was murdered in the state of Louisiana, which is a state in the country

---

[2] Merritt is not attorney of record but is alleged to also be bound by Rule 3.6(d) as a partner in Maguire's law firm, McEldrew, Young, Purtell & Merritt.

[3] https://wgno.com/news/louisiana/watch-live-justice-rally-for-ronald-greene-at-louisiana-state-capitol/

of the United States and when someone is murdered, there is something that ought to happen." (Quoted text begins at 1:07:13).

"The reason we don't have an arrest is because the elected officials that you all selected, that we selected through our vote, has said yeah that's the rules but, or else what." (Quoted text begins at 1:08:40).

"They are questioning you, about what your resolve... they want to know what you're gonna do about it. You know it was a crime. You know there was no justification for the use of force. You know that a family is injured, and we are diminished by his death. And they want to know what you're gonna do about it." (Quoted text begins at 1:08:55).

"I'm actually not here for a fancy speech. I'm here to march and to stand with the community. I'm over speeches. (Quoted text begins at 1:08:25).

"A real person, her son, [pointing to Ronald's mother] was murdered by state agents." (Quoted text begins at 1:08:30).

I know how to litigate. We're doing that. But listen. If they kill my brother, if they kill my five beautiful children, there are consequences." (Quoted text begins at 1:09:51).

"I am telling the community right now that the NAACP, ACLU, and the new Black Panther Party that supports me everywhere I go, that we now have a responsibility. I don't give a damn about their system. Civil rights have been disbanded in Louisiana, because we know under the rules of civil rights if someone is killed there is an arrest, well it's been two years and they do not plan to make an arrest. Or else what?" (Quoted text begins at 1:10:01).

I cannot tell the State of Louisiana or the community of Baton Rouge what to do. But whatever you all say to do, we got your back. (Quoted text begins at 1:10:45).

Additionally, Hollingsworth attached a photo of members of the New Black Panther Party standing guard, clad in black, wearing masks, and armed with AR-15 rifles. [Doc. 76 Exh. 1 p. 11].

Haley also spoke at the rally. He stated:[4]

---

[4] https://wgno.com/news/louisiana/watch-live-justice-rally-for-ronald-greene-at-louisiana-state-captiol/

> I've been practicing law for 13 years. I'm about to put my 1L hat on and talk about the code of criminal evidence. Just a little bit. I'm gonna school you a little bit. You see, there's a statute in the State of Louisiana that covers murder. The gist of what that statute says is, if you specifically inflict great bodily harm or have the specific intent to kill and someone dies that is murder. (Begin at 1:13:25)

> "Now much was made about the bullshit autopsy, I'm sorry I had to curse, that was done on Ronnie Greene...wanna talk about some cocaine delirium, and some alcohol, and what he ate for breakfast the day before, and who he talked to on the phone, and somehow that played into his state of emotions were. Nah, I ain't here for all that." (Begin at 1:14:27)

> "The world saw on those nine videos, that were released, how Ronnie Greene died. Did it look like cocaine? Did it look alcohol? Did it look like a damn car accident? What did it look like? [Crowd chants "Murder!"]. And what do we do with murderers. [Crowd chants "lock them up!"] (Begin at 1:15:00).

(5) Attached as Exhibit 1 to Hollingsworth's Motion, is a May 26, 2021 letter by Merritt, on behalf of Plaintiff, addressed to Louisiana Governor Jon Bel Edwards, setting forth Plaintiff's allegations, and offering to negotiate a settlement through an in-person meeting with Governor Edwards.

Hollingsworth argues that should these actions continue, we can expect coordinated rallies and protests around the trial of this case potentially like the George Floyd/Derek Chauvin trial.[5]

(6) WAFB News interview, Merritt, Haley, and Maguire state:[6]

> The question that we have, as representatives of Ronald Greene's family is, is murder illegal in the state of Louisiana? (Quoted text begins at 0:11).

> "Kory York, Dakota Demoss, and James Clary are criminals. (Quoted text begins at 1:52).

> "What we saw...was the murder of a man in the State of Louisiana". (Quoted text begins at 5:22).

---

[5] Hollingsworth also argues that Tayla's attorneys promote their involvement of both George Floyd and Ronald Greene investigations on their firm website. https://www.stopexcessiveforce.com

[6] https://www.facebook.com/Channel9Baton Rouge/videos/529132025117512/? tn =K-R

7

> Let's be clear. This is murder. (Quoted text begins at 5:41).

At this press conference, Tayla attended, and Ronald's mother and sister spoke.

(7) National interview of Merritt on ABC News. Merritt stated:[7]

> "No one has delivered any specific action," Merritt said. "We believe in equal protection under the law. And we know if a white citizen, a fellow police officer, the governor's child, had met the same end that Ronald Greene met, there would be action by now."

(8) Nationally, on CNN, Haley is quoted as saying:[8]

> "Everyone that put their hands on Ronald Greene should be arrested and two minutes after they are arrested, anyone that participated in the cover-up should follow them right into the jail cell," Haley told CNN.
>
> Haley said Saturday that the troopers "took it upon themselves to be judge, jury and executioner."
>
> What makes sense to us would be a charge of homicide on the officers that put their hands on Ronald Greene, and we want those also that participated in the cover-up that night and subsequently afterward to face punishment as well," Haley told CNN on Thursday."

(9) Nationally on ABC News and, internationally on Al Jazeera, Haley is quoted as saying:[9] [10]

> "Make no mistake: Ron Greene was murdered at the hands of Louisiana State Police."

(10) In a television news interview on KNOE (located in the city where the trial will be held), Merritt stated:[11]

---

[7] https://abcnews.go.com/US/wireStory/capitol-rally-planned-death-man-police-custody-77941530

[8] https:/www.cnn.com/2021/05/22/US/ronald-greene-louisiana-video-Saturday/index.html

[9] https://abcnews.go.com/US/wireStory/capitol-rally-planned-death-man-police-custody-77941530

[10] https://www.aljazeera.com/news/2021/5/27/rights-activists-charge-police-who-murdered-ronald-greene

[11] Quoted text begins at 1:32: https://www.knoe.com/2020/09/18/west-monroe-family-still-demanding-justice-after-in-custody-death/

"Although we are now thoroughly convinced of what we eventually put into that complaint that there was extreme misconduct involved in Ronald Greene's murder and that people need to go to jail and the system needs to change."

(11) A Facebook® post linking the KNOE interview, Mr. Merritt stated:[12]

Ronald Greene was murdered by Louisiana State Troopers over a year ago. They lied about the chase. They lied about the arrest. They lied about his cause of death. Local prosecutors knew they were lying and for one year did nothing. This is why we need federal oversight for all in custody deaths and officer involved shootings.

(12) Television news interview on KTVE, (also located in the city where the trial will be held) Merritt stated:[13]

What this video done and all this being in the view of the public, it really shows us, especially as the degree of conspiracy and cover-up comes to light, is how truly systemic police violence is. That Ronald Greene was beat to death on the side of the road on May 10th 2019, not because he was some bad guy or because officers 15 have a tough job, but because it's their policy that if someone runs from the police it shows them what they perceive to be that form of disrespect. They're allowed by the supervisors, they're allowed by the system to use this form of gratuitous violence to punish them, and it's that kind of violence, systemic violence that is sanctioned by the state that we really need to have specific policies to deal with.

(13) On global internet news site "Democracy Now!" Merritt stated:[14]

Yeah, John Bel Edwards, who's paid lip service to the Black Lives Matter movement, for the students at places like Louisiana State University. His father is a sheriff. His grandfather was a sheriff. He signed in the Blue Lives Matter legislation that made it a hate crime to target police officers in Louisiana. And his actions have shown that he's willing to go to bat for law enforcement but has failed to take concrete steps to really remedy very real issues of violence, mass incarceration and systemic racism within the Louisiana State Police Department.

So, again, he's moved towards the Black community with lip service, especially over the last year, but in terms of tangible, concrete results, we've seen very little.

---

[12] https://www.facebook.com/Lee-Merritt-Esq-229680694170570/videos/ronald-greene-was-murdered-by-louisiana-state-troopers-over-a-year-ago-they-lied-/331715928153015/

[13] Quoted statements begin at 3:05: https://www.myarklamiss.com/news/local-news/watch-ktves-bode-brooks-sits-down-with-ronald-greenes-family-attoney/

[14] https://www.democracynow.org/2021/5/24/ronald_greene_louisiana_police_arrest_death

And we're looking for specific actions in this case, including him instructing the attorney general to vigorously prosecute these men for the local state charges, and participating fully with a federal review of his state police — not only this troop, but the culture within the Louisiana State Troopers Office generally.

And I don't think I've seen a more graphic example of the continuation of the slave culture than this scene. It invokes the images of slave catchers hunting down a runaway slave. And it's really from that spring that this culture drew from. You had to punish runaway slaves in places like Louisiana, if they ran, to send an example to other enslaved persons that they're not allowed to run, or they would receive this kind of violence. That culture, that training is still alive and well today, in a way that I think a lot of Americans will find very off-putting, but it hasn't gone anywhere in the hundreds of years that this culture has set in.

And this troop is notorious for brutality in the region. The officers who were involved in this violence went on, after the death of Ronald Greene, to participate in the brutalization, and even death, of other members of the Louisiana community. You mentioned in your opening that one of the officers, Dakota DeMoss, is facing criminal charges, but not as it relates to the murder of Ronald Greene or even the aggravated assault of Ronald Greene, but for a completely separate incident. That is also true of Chris Hollingsworth. Before he passed away, it was discovered that he had other incidents of violence attached to him that the leadership structure in Louisiana helped to cover up for.

(14) On a nationally televised NBC interview, Merritt stated:[15]

"It invokes the image of what you might imagine how slave catchers looked when hunting down a runaway slave."

(15) A May 23, 2021 tweet by Merritt on Twittter® stated:[16]

"Understand running away from the plantation was a crime—just like it was a crime when #RonaldGreene ran from the police. U.S. Court's carved out 'justifications' for police use of force when 'suspects' run."

(16) May 23, 2021 tweet by Merritt on Twitter® stated:[17]

"That's because this is their policy. If a black man runs, you get to beat him."

---

[15] Quoted text begins at 1:11 on the NBC news video at: https://www.nbcnews.com/news/us-news/louisiana-police-unit-probed-over-black-driver-arrests-after-death-n1270283

[16] [Doc. No. 76 p.17]

[17] [Doc. No. 76 p.17]

(17) May 28, 2021 tweet by Merritt on Twitter® stated:[18]

"Louisiana's elected officials response to the truth being revealed about the murder of #Ronald Greene shows to just how far we still have to go. The crime itself was heartbreaking but the failure of leadership is epidemic."

(18) In a Channel 9 television interview, Merritt stated:[19]

"We're asking for families to be disruptive, disruptive in whatever way that fits their lifestyle. We cannot continue with business as usual, someone was murdered, someone died, he was a meaningful member of this family."

(19) Movant points to other tweets and interviews too numerous to list.

**B. Court Rules**

Every attorney permitted to practice in the Western District of Louisiana is required to be familiar with the Court rules. LR 83.2.8W, Uniform Rules for District Courts. To govern attorney conduct, the U.S. Western District of Louisiana adopted the Rules of Professional Conduct of the Louisiana State Bar Association. LR 83.2.4W, Uniform Rules for District Courts.

> Rule 3.6 of the Louisiana Rules of Professional Conduct, which governs Trial Publicity, provides:
>
> (a) A lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter.
>
> (b) Notwithstanding paragraph (a), a lawyer may state:
>
> (1) the claim, offense or defense involved and, except when prohibited by law, the identity of the persons involved;
> (2) information contained in a public record;
> (3) that an investigation of a matter is in progress;

---

[18] [Doc. No. 76 p.18]
[19] https://www.facebook.com/Channel9BatonRouge/videos/529132025117512/?_tn_=K-R (Quote begins at 22:04)

11

   (4) the scheduling or result of any step in litigation;
   (5) a request for assistance in obtaining evidence and information necessary thereto;
   (6) a warning of danger concerning the behavior of a person involved, when there is reason to believe that there exists the likelihood of substantial harm to an individual or to the public interest; and
   (7) in a criminal case, in addition to subparagraphs (1) through (6):
    (i) the identity, residence, occupation and family status of the accused;
    (ii) if the accused has not been apprehended, information necessary to aid in apprehension of that person;
    (iii) the fact, time and place of arrest; and
    (iv) the identity of investigating and arresting officers or agencies and the length of the investigation.

 (c) Notwithstanding paragraph (a), a lawyer may make a statement that a reasonable lawyer would believe is required to protect a client from the substantial undue prejudicial effect of recent publicity not initiated by the lawyer or the lawyer's client. A statement made pursuant to this paragraph shall be limited to such information as is necessary to mitigate the recent adverse publicity.

 (d) No lawyer associated in a firm or government agency with a lawyer subject to paragraph (a) shall make a statement prohibited by paragraph (a).

Tayla's attorneys of record, Haley and Maguire are bound by Rule 3.6. Additionally, Hollingsworth argues that Merritt is a partner associated in Maquire's Philadelphia, Pennsylvania law firm, McEldrew, Young, Purtell & Merritt, and is therefore specifically bound by Rule 3.6 and Rule 3.6(d).[20]

Rule 3.6 is derived from the ABA Model Rules of Professional Conduct.

Comment 5 to ABA Model Rule 3.6 states:

---

[20] Merritt was also identified as Tayla's attorney in many of the interviews and videos.

"[t]here are…certain subjects that are more likely than not to have a material prejudicial effect on a proceeding, particularly when they refer to a civil matter triable to a jury," including:

the character, credibility, reputation or criminal record of a party, suspect in a criminal investigation or witness, or the identity of a witness, or the expected testimony of a party or witness;"

### C. Jurisprudence

Trial courts have an affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity. *Gannett Co. v. DePasquale*, 443 U.S. 368, 378 (1979).

The beneficiaries of this duty include not only the defendant in a given trial, but other defendants as well, such as co-defendants in the same case, or defendants in related cases, whose fair trial rights might be prejudiced by the extrajudicial statements of other trial participants. The vigilance of trial courts against the prejudicial effects of pretrial publicity also protects the interest of the public and the state in the fair administration of justice. *United States v. Noriega*, 917 F.2d 1543, 1549 (11th Cir. 1990) (per curium).

This duty comports with the constitutional status of all First Amendment freedoms, which are not absolute but instead must be applied in light of the special characteristics of the relevant environment. *Tinker v. Des Moines Indep. Community,* School Dist. 393 U.S. 503, 514 (1969). Although litigants do not surrender their First Amendment rights at the courthouse door, those rights may be subordinated to other interests that arise in the context of both civil and criminal trials. *Seattle Times v. Rhinehart*, 467 U.S. 20, Fn. 18 (1984).

A gag order directed at trial participants, and not the press, is evaluated under a less stringent standard than gag orders on the press. *U.S. v. Brown*, 218 F.3d 415, 425 (5th Cir. 2000).

Limitations on First Amendment freedoms must be no greater than are essential to the protection of the particular governmental interests involved. *Procunier v. Martinez*, 416 U.S. 396, 413 (1974).

### D. Application

In this case, which involves a potential gag order directed at trial participants (not the press), this Court finds that there is a substantial likelihood that, if allowed to continue, extrajudicial commentary by Tayla, and her attorneys, would prejudice the Defendants' ability to have a fair trial in this case.

As noted in Comment 5 to ABA Model Rule 3.6, there are certain subjects that are more likely than not to have a material prejudicial effect on civil proceeding to be tried to a jury, which includes character, credibility, reputation, or criminal record, of a party. *U.S. ex rel Stewart v. Louisiana Clinic*, 2002 WL 32850 at 2 (E.D. La. Jan. 10, 2002).

As indicated above, Rule 3.6 of the Louisiana Rules of Professional Conduct[21] (which governs "Trial Publicity"), prohibits a lawyer or a lawyer associate in a firm with a lawyer participating in the litigation of a case from making an extrajudicial statement that the lawyers know, or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing the case.

This case is to be tried before a civil jury. Extrajudicial statements by Tayla's attorneys (and associates) that the Defendants "murdered" Ronald, that the Defendants are "criminals," referring to the Defendants as "slave catchers," referring to unrelated criminal charges against the Defendants, are references to the items prohibited by Rule 3.6. They are more likely than not

---

[21] Adopted by the U.S. Western District of Louisiana L.R. 83.2.4W

to have a material prejudicial effect on this proceeding. None of these statements would be admissible at trial.

The sheer number of interviews, press conferences, (national, state, and local) tweets, etc. also weigh in favor of a finding that these, and future extrajudicial statements, if allowed to continue, would be substantially likely to prejudice the Defendants' right to a fair jury trial.

Many of the extrajudicial statements are racially divisive and promote violence. Tayla's attorneys have attempted to compare this case to the George Floyd/Derek Chauvin trial which invoked rioting in Minneapolis, Minnesota in 2020. Additionally, the attorneys have referenced the Defendants as "slave catchers" and compared Ronald's flight to a runaway slave. Telling crowds that the attorneys and the new Black Panther Party has their back, whatever they decide to do about it, comparing this case to the George Floyd/Derek Chauvin trial, asking families to be disruptive, accusing the Defendants of murder, and continually attempting to make this case about race are clearly attempts to incite violence.

The attorneys for Tayla have demonstrated a desire to use every possible media opportunity to gain an advantage and to promote a settlement. Further extrajudicial statements would materially prejudice the ability to conduct a fair trial. Extrajudicial statements would likely increase the closer this case gets to trial, which would also increase the chances of tainting the jury venire. Most, if not all, of the extrajudicial statements made by Tayla's attorneys would not be admissible at trial.

Attorneys for Tayla argue that a gag order would infringe on their First Amendment right of free speech. A litigant's First Amendment rights can be subordinated to the right to a fair trial. *U.S. v. Brown, supra.* Tayla's attorneys' second argument is that they are not bound by

Rule 3.6 of the Louisiana Rules of Professional Conduct because Rule 3.6(b)(6) allows the attorneys to make these extrajudicial statements. Rule 3.6(b)(6) allows attorney to state "a warning of danger concerning the behavior of a person involved, when there is reason to believe that there exists the likelihood of substantial harm to an individual or to the public interest." Tayla's attorneys' extrajudicial statements are not a warning. They are a judgment. Statements referring to Defendants as "murderers," "slave-catchers," and statements of the Defendants' unrelated arrests, suggestions of jailtime for Defendants, settlement offers, and statements suggesting violence can in no way be permissible under Rule 3.6(b)(6).

Every person who exercises a right to a jury trial in the United States of America has a right to a fair trial by impartial jurors. Although Tayla and her attorneys have First Amendment rights, these rights are not absolute. First Amendment rights may be subordinated to other interests in the context of a civil trial, which in this case, is the Seventh Amendment right to a trial by jury in a civil case. The extrajudicial commentary by Tayla and her attorneys would present a "substantial likelihood" of prejudicing the Court's ability to conduct a fair trial. A gag order will be ordered in this case.

### E. Narrowness of the Order

The limitation on First Amendment freedoms must be "no greater than is essential to the protection of the particular governmental interest involved. *Procunier v. Martinez*, 416 U.S. 396, 413-14 (1974).

The order also must give clear guidance regarding the type of speech that an individual may not utter. *Smith v. Goguen*, 415 U.S. 566, 572-73 (1974).

Additionally, a Court is to determine whether other precautionary steps (change of venue, jury sequestration, voir dire questioning and/or emphatic jury instructions) could be used as alternatives to a gag order. *Sheppard v. Maxwell*, 384 U.S. 333, 362-63 (1966).

First, this Court will consider other alternatives to a gag order. Due to this intense local, state, and nationwide publicity, this Court believes that a change of venue, jury sequestration, intense voir dire questioning, or emphatic jury instructions would not be enough. This case is not even set for trial. Tayla's attorneys have engaged in any and every media opportunity available to promote this case. This case will likely attract media attention wherever it is moved, especially local media attention. There is a substantial likelihood that extrajudicial comments will be more numerous closer to trial and will, therefore, undermine the Defendants' right to a fair trial. The alternative measures will not adequately protect the Defendants right to a fair trial.

The AP suggests that a gag order involving the attorneys is not necessary because the attorneys are already subject to Rule 3.6 of the Louisiana Rules of Professional Conduct. While that should be true, it is not here. Tayla's attorneys have engaged in consistent violations of Rule 3.6. In their Opposition [Doc. No. 87] Tayla's attorneys show no remorse and no intention to stop these extrajudicial statements. As cited by Hollingsworth in her Reply [Doc. No. 91, p7] in a July 29, 2021 article on myarklamiss.com,[22] Haley is quoted as saying "I just don't understand. Why can't we get into what's right and what's wrong? Wait to hear our response, we're going to keep pushing." This response makes it even clearer that a gag order is needed to protect the Defendants' right to a fair trial. Tayla's attorneys either don't understand Rule 3.6, or do not

---

[22] Entitled "Ronald Greene Family's Attorney Says He WILL NOT BE Silenced Following AG's Office Gag Order Request."

17

care what it says. A Protective Order is necessary so this Court can address further violations with sanctions.

## III. CONCLUSION

For the reasons set forth herein, IT IS ORDERED that Hollingsworth's Motion for Protective Order [Doc. No. 76] is GRANTED in accordance with the terms and limitations set forth in the attached Order.

MONROE, LOUISIANA this 13th day of August 2021.

_____
TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE