UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| TAYLA GREENE | CIVIL ACTION 3:20-CV-00578 |
| VERSUS | JUDGE TERRY ALVIN DOUGHTY |
| DAKOTA DEMOSS, ET AL. | MAG. JUDGE KAYLA D. McCLUSKY |

HOLLINGSWORTH'S RESPONSE TO
PLAINTIFF'S MOTION FOR CLARIFICATION

MAY IT PLEASE THE COURT:

Digital media has greatly improved the public's access to information but has also vastly increased the risk of harmful exposure of potential jurors to information which could negatively impact a court's ability to conduct a fair trial. Social media platforms such as Facebook, Twitter, Instagram, LinkedIn, and YouTube, along with search engines like Google, Yahoo, and Bing, provide instant access to unfiltered information. Moreover, unlike in traditional media, where a negative news story appeared only for a short period, negative social media posts, website content, and news stories now often remain searchable and sharable on the internet in perpetuity.

The Motion for Clarification filed by Plaintiff, Tayla Greene, [ECF No. 94] presents an opportunity for the court to mitigate the risk of harmful exposure of potential jurors to prejudicial information, such as the many social media posts by Plaintiff's counsel which disparage the character, reputations, and credibility of Defendants and the late Master Trooper Chris Hollingsworth. Darby did not oppose Plaintiff's motion because it will allow the court to clarify the gag order issued on August 13, 2021[ECF No. 93] and require that Plaintiff and her legal team take very reasonable measures to rectify some of their past Rule 3.6 violations. Darby simply asks that Plaintiff and her legal team edit or delete all their public social media posts and website content

1

which continue to pose a substantial risk of unfairly prejudicing the Defendants or impacting the court's ability to conduct a fair trial. Accordingly, Defendant, Darby Hollingsworth, responds to the motion to request that the court clarify its gag order by expressly ordering Plaintiff and her legal team to search all their existing social media platforms or websites they control within a reasonable time to identify, edit and/or delete any statements or content which violate this Court's gag order. In fact, Darby's request to this effect by e-mail to Plaintiff's counsel on August 18, 2021 [ECF No. 94.1] precipitated this motion to clarify.

In response to Darby's request to edit or delete offending statements or content, Plaintiff and her legal team take the position that the gag order does not apply retroactively to offending statements or content which pre-date the gag order. To the contrary, Darby contends that retroactivity is reasonable given the egregious conduct which necessitated a gag order. Such violative social media posts as those identified in Darby's motion for protective order, *e.g.*, referring to Defendants as "slave-catchers" and "murderers," are still searchable and sharable on the internet. Additionally, Plaintiff's legal team promote their anti-LEO lawsuits on a website they apparently control which contains searchable and shareable body worn camera video footage of Mr. Greene's apprehension, which the court expressly prohibited Plaintiff's counsel from disseminating to the public.[1]

The gag order covered "oral and written statements whether in person, recorded, or electronic." [ECF No. 93]. Of course, an electronic statement would necessarily include social media posts by Plaintiff and her legal team or content on a website created and/or controlled by

---

[1] *See* www.stopexcessiveforce.com hosted by McEldrew Young Purtell Merritt which contains a web page with a link entitled "Ronald Greene" which shows a substantially edited version of the body worn camera footage of Mr. Greene's apprehension leaked to the Associated Press that also includes commentary by a purported use of force expert.

Plaintiff's counsel.

The gag order prohibits social media posts and web content: (1) relating to the character, credibility, reputation, arrests, or criminal record of a party or witness in this proceeding, (2) accusing parties of a criminal offense, or (3) which are intended to promote violence. Darby has already provided numerous examples of violative social media posts by Plaintiff's counsel.

The gag order also prohibited showing or putting on social media any videos of the incident in question. At this moment, Plaintiff counsel have existing social media posts and a website where an edited version of the body worn camera video of the incident in question can be watched while reading a description of the incident by Plaintiff's counsel or listening to some purported use of force expert commenting on behalf of the Associated Press.

Made today, many of the existing social media posts and web content of Plaintiff's counsel clearly violate the gag order. However, the gag order can also be reasonably interpreted to prohibit violative social media posts and web content which pre-date the order because the order prohibits any statements that Plaintiff's counsel knows or reasonably should know will be disseminated by means of public communication. In the very least, Plaintiff's counsel should know that pre-gag order statements and web content could still be easily disseminated in the public simply by sharing, retweeting, or copy/pasting a hyperlink. Given the realities of the digital age, this risk is obvious. Retroactive application of the gag order will mitigate the risk of dissemination of past statements which clearly violate the gag order. Retroactivity would also rectify past Rule 3.6 violations.

Plaintiff's counsel should know that past statements could be easily disseminated by anti-LEO activists, supporters, or proxies of Plaintiff and her legal team. Absent clarification and strict retroactive enforcement of the gag order, at any moment prior to or during the jury trial of this case, the offending statements are a mouse-click away from being disseminated by anyone who

heeds the call by Plaintiff's counsel to be "disruptive in whatever way that fits their lifestyle."[2]

Additionally, in addition to the risk of sharing, retweeting, or copy/pasting a hyperlink by the public, the offending social media posts and web content could still be searched and viewed easily by potential jurors who simply enter the name of Plaintiff's counsel or "Ronald Greene" in the search function of their own social media platforms or search engines. This risk will be present for as long as the offending posts and web content remain public and searchable. And this risk is evident because jurors are known to conduct their own research despite admonitions or instructions to the contrary. "The legal landscape is littered with the many instances in which the hard work of a judge, lawyers, and other jurors has been undone by the actions of a single juror who has taken it upon himself or herself to venture online and 'research' the issues, parties, and even evidence in a case, or to communicate with third parties (sometimes even one of the litigants themselves) about the case."[3]

While the risk of prejudice to Darby's right to a fair trial is mitigated with the passage of time as offending social media posts become deeper in search results, the risk is certainly not eliminated. Therefore, Darby's request to Plaintiff's counsel was imminently reasonable – simply clean up their social media platforms in compliance with Rule 3.6. Similarly, Plaintiff's counsel should edit their website to delete body worn camera video of the incident which was leaked by someone with access to investigative materials and then released to the public after being substantially edited by the Associated Press.

Plaintiff is in no position to complain about Darby's request. Plaintiff and her legal team

---

[2] https://www.facebook.com/Channel9BatonRouge/videos/529132025117512/?__tn__=K-R (Quote begins at 22:04)

[3] Browning, J., ABA Journal, *Voir Dire Becomes Voir Google: Ethical Concerns of 21st Century Jury Selection*, April 25, 2019.

made a deliberate and strategic decision to engage in an extensive national and local media campaign to disparage the character, reputations, and credibility of Defendants and Master Trooper Chris Hollingsworth. With the gag order, Plaintiff's counsel are now on notice from the Court that many of the extrajudicial statements made during their extensive media campaign clearly violated Rule 3.6. Plaintiff's counsel should also realize that the continuing public existence of offending extrajudicial statements poses a substantial risk of materially prejudicing the court's ability to conduct a fair trial. Nevertheless, Plaintiff's counsel refuse to voluntarily rectify the risk of harm posed by their Rule 3.6 violations. Instead, Plaintiff seeks an interpretation of the gag order which allows violative statements to be publicly accessible and easily disseminated.

Moreover, according to the motion to clarify, Plaintiff and her legal team would shift the burden of policing their many past statements onto Darby and her counsel. Plaintiff contends in her motion that Darby should be ordered to search out and identify offensive social media posts of Plaintiff's legal team, bring those posts to their attention, and let them decide whether Darby will need to file a motion to obtain relief from the court. But Darby should not bear this burden.

Plaintiff's legal team owed a professional obligation to comply with Rule 3.6, not Darby. And it was Plaintiff's counsel who ignored Rule 3.6, not Darby or her counsel. Likewise, it was Plaintiff's counsel, not Darby, who publicized the offending posts. Considering the abusive nature of their extensive media campaign to promote this case, it is certainly not unreasonable to require that Plaintiff's counsel search their own social media platforms and website to identify, edit, and/or delete all offending statements or video within a reasonable time. Then, after a reasonable time, Darby could seek relief from the court if necessary to address any remaining gag order violations.

Respectfully submitted,

**JEFF LANDRY**
**ATTORNEY GENERAL**

**BY**: /s/     *P. Scott Wolleson* (#22691)
          Special Assistant Attorney General

**BREITHAUPT DUBOS & WOLLESON LLC**
1811 Tower Drive
Monroe, Louisiana 71201
Telephone: (318) 322-1202
Facsimile: (318) 322-1984
Email: scott@bdw.law

**ATTORNEYS FOR HOLLINGSWORTH**

# CERTIFICATE OF SERVICE

I hereby certify that on September 9, 2021, a copy of the foregoing Hollingsworth's Response to Plaintiff's Motion for Clarification was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel by operation of the court's electronic filing system.

*/s/ P. Scott Wolleson*